COWLES AND McSWAYNE *v.* WILLIAM H. POINTER.

A warehouseman is not required by law to construct his buildings secure from all possible contingencies, but they are sufficient if reasonably and ordinarily safe against ordinary and common occurrences.

It is only required of a warehouseman that he should exercise reasonable and ordinary diligence in the keeping and preservation of articles intrusted to him, such as men exercise in their own private affairs.

IN error from the circuit court of Yalobusha county; Hon. F. M. Rogers, judge.

The facts of the case are sufficiently stated in the opinion of the court.

*Garnett* for appellants.

Warehousemen are required to bestow only ordinary attention in taking care of property under their control, and are responsible only for negligence. Story on Cont. 742, and cases cited.

Unless the injury grew out of negligence, warehousemen are not responsible for any injury to property placed under their charge. Story's Bail. 444, and cases cited; *Powers* v. *Mitchell*, 3 Hill, 545; *Cheneworth* v. *Dickinson*, 8 B. Mon. 156.

*D. C. Glenn* on the same side.

The doctrines which have been applied to common carriers have never been applied to warehousemen. The common carrier is held responsible as an insurer of goods to prevent combinations, chicanery, and fraud. To extend this rigorous law to a person standing in the position of the plaintiff in error, it seems to me would be unjust and unreasonable.

Warehousemen stand generally in the situation of ordinary bailees for hire, and are therefore answerable only for ordinary neglect. Jones on Bail. 96; Peake, 113; Cowper, 480; 4 Term, R. 581.

They are "only responsible for ordinary care and skill and diligence," and "are bound to take common and reasonable

care of the commodity intrusted to their care." Story on Bail. § 444 (2); 9 Wend. 60, 268; 2 Ib. 593.

Chancellor Kent says, speaking of warehousemen and wharfingers: " They are all responsible for want of good faith and of reasonable care and of ordinary diligence, and not to any greater extent, unless the business and duty of carriers be attached to their other character." 2 Com. Dig. 757, citing 1 Esp. N. P. 315; 7 Cow. 497; 7 Bing. 35.

I also particularly invite the attention of the court to the facts of the case, and the law, as expounded by Chief-Justice Spencer in *Roberts* v. *Turner*, 12 Johns. R. 233.

*D. Mayes*, for appellee, argued the case, but filed no brief.

Mr. Justice HANDY delivered the opinion of the court.

This action was brought by the defendant in error against the plaintiffs in error, as warehousemen, to recover for the damage done to a quantity of cotton deposited in their warehouse on the Yalobusha River, and the question presented for consideration is, whether the verdict for the plaintiff below should be set aside as contrary to the law and evidence in the case.

It appears from the evidence, that shortly after the cotton was received in the warehouse, an unprecedented rain fell, causing a sudden and extraordinary freshet in the Yalobusha River, such as had not occurred for some sixteen or seventeen years; that this warehouse was high, and safe above all ordinary overflows; and that, from the year 1838 to the time of this freshet, the water had never been high enough to do material injury to cotton deposited in it; that when the river commences overflowing its banks, it is impossible to know how high it will go, but that, on several occasions, in anticipation of heavy rises in the river, the cotton has been removed from this warehouse to higher ground, and the water would go down without rising high enough to have damaged the cotton had it been left in it; that the plaintiff had cotton in the warehouse which was greatly damaged by remaining under water; that with a sufficient force, and by commencing to remove the cotton when the river

Cowles and McSwayne *v.* Pointer.

first began to overflow its banks, the cotton might have been saved from damage, and if the sheds had been built two feet higher, the overflow would not have injured it; that the rain commenced falling on Sunday, and continued a day or two, and on Tuesday evening the river commenced running over its banks, and continued to rise until the last of the week, and by Thursday the water reached the warehouse, covering the lower tier of cotton bales, and half the next tier, and it was covered with water for several days.

It is shown that, on Wednesday or Thursday, the defendants began to raise the cotton in the warehouse, in order to get it above the water, the house being nearly full of cotton, in the same way and about the same time that others engaged in the neighborhood in similar business did, and that defendants did the best they could to save the cotton from damage, and raised it as high as it could be raised. Failing to protect it by that means, they had no other way of saving it but by removing it in a flat boat; that they endeavored to remove it in that way, but the boat was sunk in the attempt, and there was no other boat at the village; that defendants used every effort to get hands to assist in raising the cotton and in removing it, but that owners of negroes were unwilling to have them employed in such work, which was dangerous to health and life, and they were unable to obtain a sufficient force to protect the cotton. In short, the proof goes to show, that after the overflow became alarming, the defendants set to work and used every exertion within their power to save the cotton; first, by raising it, which, under ordinary circumstances, would have been sufficient, and afterwards by removing it, which they were unable to effect for want of boats and hands, and the impossibility of obtaining them.

Upon this evidence, and under proper instructions from the court upon the law, the jury found a verdict for the plaintiff.

Although this court will not disturb the verdict of a jury which is not clearly against evidence, it is nevertheless our duty to set it aside when it is manifestly contrary to the evidence; and the evidence here shows that this is a case of that character.

Cowles and McSwayne *v*. Pointer.

The court properly instructed the jury, that if they should find from the evidence, that the plaintiff's cotton was damaged by a sudden and extraordinary overflow of the river, and that the defendants employed reasonable and ordinary diligence to prevent such damage, their verdict should be for them. That the law does not require a warehouseman to construct his buildings secure from all possible contingencies; if they be reasonably and ordinarily safe against ordinary and common occurrences, it is sufficient. That warehousemen are required only to exercise reasonable and ordinary diligence in the keeping and preservation of articles in their keeping, such as men ordinarily and reasonably exercise in their private affairs.

The evidence here showed that the defendants not only used ordinary care and reasonable diligence in providing for the preservation of the cotton, and in their efforts to save it after the danger appeared, but, in the language of the plaintiff's witness, that " they did the best they could to save the cotton from damage," and, in the language of another witness, that they " used every exertion in their power to save the cotton from danger." The entire evidence shows clearly, and without any room for doubt, that extraordinary diligence was employed by them. The only portion of the evidence which could tend in the least to show negligence, is the statement of the plaintiff's witness, that " with a sufficient force, and by commencing to remove the cotton when the river first began to overflow its banks," the cotton might have been saved. But the evidence shows that so extraordinary an overflow could not have been anticipated by any ordinary prudence, and that the defendants acted like the plaintiff's witness, who was engaged in the same kind of business, in taking steps against the emergency. It also appears, that in all the overflows since 1838, there has been no necessity for removing cotton from this warehouse. To hold the defendants liable, then, on this ground, would be to require of them a degree of prudence and foresight not belonging to finite minds. The rule upon which the jury seem to have acted is, therefore, in opposition to the well established rules declared to them by the court, in regard to the prudence, care, and diligence which were required of the defendants under the circumstances of this case.

The judgment is, therefore, reversed, the verdict set aside, and a new trial awarded.

FISHER, J., having been counsel in this case, took no part in the opinion.