## Robert C. Wilson and Lemuel D. Lane, Partners, etc., v. William A. Kelly.

1. INSTRUCTIONS—*Insurers Against Carelessness.*—In an action to recover damages for personal injuries it is error to instruct the jury that no degree of care on the part of defendant will exonerate him from liability for an injury actually caused by a defect in his machinery. Such an instruction makes the defendant an insurer even against the carelessness of the plaintiff, however gross, the willful acts of strangers in causing a defect, or in what the law terms the act of God.

**Memorandum.**—Case, for personal injuries. Appeal from the Circuit Court of Vermilion County; the Hon. FERDINAND BOOKWALTER, Judge, presiding. Heard in this court at the May term, 1893. Reversed and remanded. Opinion filed October 28, 1893.

The opinion states the case.

S. G. WILSON and SALMANS & DRAPER, attorneys for appellants.

LAWRENCE & LAWRENCE, attorneys for appellee.

MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

Case for personal injury brought by appellee, who recovered judgment below on a verdict of $2,000, which the court refused to set aside.

Appellants were grain dealers at Henning, where they had an elevator with several dumps, at one of which appellee received the injury and damage sued for. As well as we can understand from the description given by the witnesses, it consisted of a door in an elevated platform, resting at one end on a beam to which it was fastened by a trigger, and could be let down at that end. On the other side of the beam was a trap through which the grain was dumped from the wagon by letting down the hind wheels upon the door. The operation was to back the wagon upon the dump, pull up the trap, knock or push the trigger off, letting down the dump with the hind wheels upon it, when

the grain would slide out of the box and through the trap. Appellee was hauling grain for his uncle to the elevator and had been so employed for eight days, when, on January 20, 1892, in attempting so to dump a load of corn, he claimed that the trigger, through some defect, slipped off prematurely, and he was knocked upon the falling door by the wagon, which fell upon him. He was standing at the time at the rear corner of the wagon-box, had raised the trap by an iron bar on it arranged for that purpose, and was about to move the trigger when it slipped. Only a few minutes before he had so dumped his own load, knocking off the trigger with a crow-bar, driven off and hitched his team, and hurried back to dump the load of another man who was hauling for the same party.

He testified that the reason the trigger flew off was because it was "kind o' beveled off." His uncle, who examined it shortly after the accident, said the oak board where the trigger comes over it, was warped a very little, and he thought, from what he saw, that the trigger or spring was too weak to hold itself. Jacob Snelly, who fixed the dump the day after the accident and was called as a witness by plaintiff, testified that "the wood was all right where the spring was;" that the spring was not particularly weak, but got loose; that it was fastened with screws; that it was screwed up before as tight as it could be without any belting under it, but holds whenever you spring it; that they put a piece of belting in it and then ran a tap against it, and he thought they so made it a little tighter, and that was all they did.

Several witnesses testified, not very harmoniously, to admissions by appellant Lane, at appellee's room the day after the accident, that the dump had been out of order for some time; that they had had several accidents there; that it was their duty to keep a man at the dump to look after it, and hereafter they would keep one.

On the part of the defense Lane positively denied making these admissions or any of them. It was also denied and not proved that any accident had previously occurred there

or that the trigger had ever slipped before. The evidence tended to show that the dumps were put in new from the manufactory at Decatur in the spring before this accident, and first used in August or July, and that they were of the best kind and in the most common use. The agent from the manufacturer at Decatur, an expert, was there when it was put in place and said it was put in right. Appellant Wilson said he did most of the dumping; that "they didn't aim for the men that do the hauling to dump;" that he examined the trigger every few days, and this one just a day or two before the accident; that the board was not warped and the iron was perfectly level with the floor, and that there was snow dropping from the wagons on the dumps, making it slippery where the two irons came together.

Each of the appellants testified that he had no knowledge or notice of any defect whatever in the dump or trigger, and appellee said it had not slipped at any time before and was supposed to be solid.

Further evidence, not necessary to be stated, showed a decided conflict upon the questions of care or negligence on each side, the actual condition of the dump and trigger at the time, and the real cause of the accident.

Upon this state of the proof defendants asked, among others, the following instruction:

"You are instructed that it is incumbent on the plaintiff in this case, before he is entitled to recover, to establish by a preponderance of evidence that the dump of defendants in question was not at the time of the injury in a reasonably safe and proper condition for use, and that the defendants knew that it was not in a safe condition, or that it had been in a bad condition and repair so long that by reasonable care and diligence they should have known it; and unless the preponderance shows this state of facts, your verdict should be for the defendant."

This the court refused, but gave for the plaintiff the following: "3. It is not sufficient in this case to excuse the defendants from liability that they may have purchased and caused to be put in place dumps as good as known to the

trade or business of operating elevators, if it appears from a preponderance of the evidence that the same were not kept in a safe condition so as to avoid injury; and if you believe from a preponderance of the evidence that the dump in question was defective and by reason thereof the alleged injury resulted, then the plaintiff is entitled to recover, provided that the preponderance of the evidence shows that he was in the exercise of due care on his part to avoid the said injury."

The first given for plaintiff is to the same effect, upon the hypothesis that "persons hauling grain to said elevator were allowed to drive their teams and loaded wagons upon said dump and to operate the same for the unloading and dumping of grain so hauled."

According to these instructions for the plaintiff, no degree of care on the part of defendants would exonerate them from liability for injury actually caused by a defect in their machinery. They are made insurers, even against the carelessness of the plaintiff, however gross, the willful acts of strangers in causing the defect, or what the law terms the act of God. If wrong they are not cured by the brief instruction given on the other side, that "the law does not impose upon the defendants the duty of keeping their machinery in an absolutely safe condition, but only in a reasonably safe condition."

Counsel for appellee suggest that the court's view of the fact was that the dump was put in for the sole use and benefit of appellants, and that appellee was invited by them to use it for their convenience. They claim that such was a correct view, and that it justified the instructions given as to the law. We do not think the evidence warranted it, nor if it did, that the law was correctly stated.

Whatever might be said of such dumps in general, it was proved in this case that appellant Wilson, the senior member of defendant's firm, on the day before the accident told the plaintiff and his fellow-workman, whose load he was attempting to dump, not to dump the corn they were hauling, but to scoop it over the sides of the wagon box, because

they were hauling white corn, and the bin into which that dump led contained mixed corn. They objected to scooping, and in the afternoon pressed appellant Lane to allow them to dump it. Appellee himself testified that Lane "finally told them that when his partner, Wilson, was not around they might sneak their loads into the bin with the mixed corn, but when Wilson was around they would have to scoop it." Plaintiff did not see Wilson about the elevator before he dumped his own load, but did before he attempted to dump the other, and proceeded hurriedly in order to avoid his interference; and the jury might have considered whether his haste had anything to do with the accident, if they had been properly instructed. Thus it was proved by the testimony of the plaintiff that he was not invited to use the dump, and for the convenience of the defendants, on this occasion. He was forbidden by Wilson, but at his own special request and to save his own labor was allowed by Lane to do so upon a condition which he disregarded.

We think the case was close enough, upon every material question of fact involved, to make accuracy and clearness in the instructions a matter of unusual importance, and that in giving the first and third for plaintiff and refusing the one quoted, as asked for the defendants, there was error enough to require the reversal of the judgment. Reversed and remanded.