MUSKOGEE CRYSTAL ICE CO. v. RILEY BROS.

No. 905.    Opinion Filed January 13, 1909.

Rehearing Denied May 10, 1910.

(108 Pac. 629.)

1. WAREHOUSEMEN—"Ordinary Care." In the protection and care of property intrusted to them, it is the duty of warehousemen to use ordinary care, which is such care and diligence as ordinarily prudent persons in that business are accustomed to exercise towards such property.

2. WAREHOUSEMEN—Injury to Goods—Questions for Jury. Whether the defendant used ordinary care in the case at bar was a question for the jury, and, the jury having found against

it on evidence reasonably tending to support such a finding, their verdict is conclusive    .

(Syllabus by the Court.)·

*Appeal from the United States Court for the Western District of the Indian Territory; William R. Lawrence, Judge.*

Action by Riley Brothers against the Muskogee Crystal Ice Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

*W. F. Schuermyer* and *Maxey & Runyan,* for plaintiff in error.

*Davis & White,* for defendants in error.

KANE, J.   This was an action brought by the defendants in error, plaintiffs below, against the plaintiff in error, defendant below, for damages claimed to have been sustained by plaintiffs, who placed certain meats in the cold storage warehouse of the defendant. The plaintiffs for cause of action alleged, in substance, that in May, 1905, they orally contracted with the defendant company to store meat in one of the rooms, in its cold storage plant, and stated the contract to be as follows:

"For and in consideration of the sum of $20 to be paid each month by the plaintiffs to the defendant, the said defendant company agreed to furnish plaintiffs cold storage in which to store meat to be used by them in conducting their business as above stated. Said defendant through its officers or agents guaranteeing that any meat placed by plaintiff in the cold storage so furnished by the defendant would be properly cared for and preserved."

Then follow allegations to the effect that the plaintiff placed in the cold storage about 50 dressed beeves, which were fresh and in good condition; that owing to latent defects in said cold storage, namely, that the room was lined with lumber which was not properly seasoned for use in cold storage, and gave off a pine or other odor which was absorbed by the fresh meat, rendering the same valueless, and that said cold storage was not properly aired and cooled before the meat was placed therein, and did not preserve the meat as represented and guaranteed by the defendant

company, and as a consequence, all of said 50 beeves placed in said cold storage became tainted, spoiled, and unfit for use.

The defendant answered, first, by denying specifically every allegation in the complaint; and further alleged, in substance: That during the spring of 1905 it erected a cold storage plant in the city of Muskogee, Okla.; that before the same was completed a man by the name of Morrow, who was then running a meat market in the city of Muskogee, known as the "East Side Meat Market,". applied to it, the defendant, for space in which to store meat to be used in his meat market. The defendant rented to him one-half of one of the rooms in said cold storage plant for the sum of $20 per month. That the only thing that it agreed to furnish was the one-half of said room, and keep the temperature proper for the preservation of the meat stored therein. That it (the defendant) had nothing whatever to do with the storing of the meat in said room, and had nothing to do with taking it out. That it did not guarantee anything but to keep the room at the proper temperature; that, after renting same to said Morrow, the plaintiffs herein, Riley Brothers, bought out the business of the said Morrow, and succeeded to the rights of the said Morrow under his said contract to use said space in said cold storage plant, and did use the same for some time thereafter. That defendant at no time made any representations, promises, or contract with the plaintiffs, other than the one made with the said Morrow, and that it has fully carried out its contract in every respect, and that if plaintiffs suffered any damage it was on account of their own fault and negligence, and not on account of any dereliction on the part of defendant.

Upon the issues thus formed, the parties went to trial on the 13th day of April, 1907, before the court and a jury, which trial resulted in a verdict for the plaintiffs in the sum of $350.

The verdict being for the plaintiffs, where there is any particular difference between the parties as to the facts, they must be resolved against the defendant. The evidence shows that the meat was placed in cold storage by the plaintiffs, and that it was

spoiled by becoming impregnated with a strong taste of pine or some other pungent wood while thus stored. There was no contention that the temperature was not kept at the proper degree of coldness to preserve the meat, and the defendant contends that was all the duty it owed the plaintiffs. It seems to be the general rule that, although a warehouseman is under no obligation to make his building secure from all possible contingencies, yet it must be reasonably and ordinarily safe against common, ordinary occurrences, and he is liable where injury results from a lack of reasonable skill and diligence in its construction. *Cowles et al. v. Pointer*, 26 Miss. 253; *Neal & Co. v. Wilmington, etc., R. Co.* 53 N. C. 482; *Godley v. Hagerty*, 20 Pa. 387, 59 Am. Dec. 731; *Walden et al. v. Finch et al.*, 70 Pa. 460; *Wilson et al. v. Kelly,.* 52 Ill. App. 124.

In the protection and care of property intrusted to them, it is the duty of warehousemen to use ordinary care, which is such care and diligence as ordinarily prudent persons in that business are accustomed to exercise towards such property. Whether the defendant used ordinary care in the case at bar was a question for the jury, and, the jury having found against it on evidence reasonably tending to support such finding, their verdict is conclusive. There was also conflicting evidence on the question as to what the contract really was; the plaintiff testifying that he placed the meat in the cold storage in good order, and that the warehouseman was to take care of it. The defendant and others testified that the meat was stored under a contract to the effect that it would keep the cold storage at the proper temperature. On this proposition the jury found in favor of the plaintiffs, and, there being evidence reasonably tending to support the finding, it must be held to be conclusive.

The case at bar is in a good many respects similar to the case of *Leidy v. Quaker City Cold Storage & Warehouse Company*, 180, Pa. 323, 36 Atl. 851. In that case Mr. Justice Green, who delivered the opinion of the court, says:

"In an action against the owner of a cold storage warehouse

to recover damages for the loss of chickens and squabs injured by mould and decay, it is not necessary to prove some specific act of negligence which produced the injury; but the case is for the jury, where the evidence for the plaintiff tends to show that the chickens and squabs were in good condition when they were placed in the warehouse, that they were mouldy and rotten when taken therefrom, that the room where they were kept was damp and would cause rot, notwithstanding the fact that the chickens and squabs had been previously stored in another warehouse for a year, and the evidence offered by the defendant tends to show that the temperature of its warehouse was never above 22 degrees, that its machinery was the best of its kind, and never out of order, and that plaintiff's goods were treated the same as all others of a similar kind."

We believe the above case is decisive of the point raised by plaintiff in error in the case at bar.

The judgment of the court below is affirmed.

All the Justices concur.