## THE SPENCER LIGHT, POWER, HEAT AND WATER COMPANY v. WILSON.

[No. 8,174.    Filed February 18, 1914.    Rehearing denied April 22, 1914.]

1.  ELECTRICITY. — *Transportation.* — *Injuries to Third Persons.* — *Complaint.*—A complaint in an action against an electric light company for personal injuries by an electric shock, alleging that defendant negligently erected and maintained its poles and wires in close proximity to the poles and wires of a telephone company that maintained one pole that was entirely rotted off at the ground and was supported in an erect position by a single wire, so that it was caused to swing back and forth against defendant's electric light wire, that during a storm such loose pole was blown against such light wire so that the latter was severed and fell upon plaintiff's clothesline, charging the same with an electric current by which plaintiff was thereafter shocked, was sufficient without charging negligent delay in removing or repairing the broken wire. p. 131.

2. NEGLIGENCE.—*Complaint.—Theory.—Surplusage.*—When the nature of the action can be determined from the general scope and tenor of the complaint, alleged negligent acts not pertinent to the main theory may be disregarded. p. 131.

3. PLEADING.—*Complaint.—Initial Attack After Verdict.*—Where the sufficiency of a complaint is not questioned until after verdict, every reasonable construction will be indulged in its support, and if the averments include every essential fact and are of a character that will bar another action for the same cause, it is sufficient. p. 132.

4. ELECTRICITY. — *Transportation. — Injuries to Third Persons. — Negligence.—Evidence.*—In an action for injuries from an electric shock caused by a broken light wire which came in contact with plaintiff's clothesline, evidence showing that defendant maintained its poles and wires in an alley in close proximity to a telephone pole that was rotted off at the ground, but remained suspended by the wire attached thereto so that it would swing back and forth against defendant's wires, that after the erection of new telephone wires, and about a week before the injury, defendant's agents removed the pole from the telephone wires but permitted it to lean against defendant's wires, that during a storm such pole caused defendant's wire to sever whereby the live end came in contact with plaintiff's clothesline, and that plaintiff was shocked by coming in contact with the clothesline, was sufficient to support a verdict for plaintiff. p. 132.

5. ELECTRICITY. — *Transportation. — Poles and Wires. — Care Required.*—One engaged in the transportation of electricity and maintaining poles and wires in a public alley is required to use reasonable care to prevent the wires from falling upon the premises of adjoining property owners, and must use the highest degree of care to prevent the escape of electricity so as to cause injury to person or property. p. 133.

6. ELECTRICITY.—*Transportation.—Poles and Wires.—Construction. —Knowledge of Danger.*—Where defendant so constructed its wire carrying a high voltage of electricity that a rotted telephone pole in an alley was caused to swing against same, whereby one of the wires was severed and fell across plaintiff's wire clothesline, so that she, while later using the same, was injured by an electric shock, defendant, though not chargeable with knowledge that an accident might happen in that precise manner, was bound to know that a current of electricity such as it was transporting would be dangerous to human life if it escaped, and that accidents were a probable consequence of broken wires, and having failed to do what even a reasonably prudent person would have done under the circumstances, was guilty of gross negligence. p. 133.

7. ELECTRICITY.—*Transportation.—Care    required.—Instructions.*—
In an action for injuries from an electric shock caused by the
escape of current from defendant's high voltage wire, instructions
informing the jury that electric companies are not insurers, but
that defendant was charged with the highest practical care in
the erection and maintenance of its wires, and was bound to
erect and maintain its poles and wires as a careful and prudent
person would do under the circumstances, so as to prevent in-
jury to any person who is exercising due care, did not impose
too great burden on the defendant.   p. 134.

8. ELECTRICITY.—*Broken    Wires.—Failure   to   Repair.—Instructions.*
—In an action for injuries to plaintiff by the escape of electricity
from a broken wire, instructions that defendant was entitled to
a reasonable time after the fall of the wire to repair or remove
it, and that if defendant repaired or removed it within a reason-
able time, and was not negligent in its erection or maintenance,
it was not liable, were proper.   p. 135.

9. WITNESSES.—*Contradiction.—Party's   Own   Witness.*—In an ac-
tion   for injuries from an electric shock, where plaintiff's physi-
cian after testifying as to plaintiff's condition at the time of the
injury and that plaintiff claimed to have been shocked, testified
on cross-examination that he found nothing that would indicate
an electric shock and that he did not prescribe for an electric
shock, and on redirect examination stated that he did not remem-
ber having made different statements out of court relative to
plaintiff's condition, it was proper for the court to permit plain-
tiff to contradict him for impeachment purposes by the testimony
of other witnesses, under the provisions of §531 Burns 1914, §507
R. S. 1881, since the testimony of the physician was highly preju-
dicial to plaintiff's cause.   p. 136.

From Morgan Circuit Court; *Joseph W. Williams,* Judge.

Action by Ella Wilson against the Spencer Light, Power,
Heat and Water Company.   From a judgment for plain-
tiff, the defendant appeals.   *Affirmed.*

*Miller & Dowling,* for appellant.
*Willis Hickam* and *D. E. Watson,* for appellee.

IBACH, J.—Appellant owns and operates an electric light
plant in the city of Spencer.   The complaint charges that
appellant was negligent in erecting and maintaining its
poles and wires in close proximity to the poles and
wires of a telephone company, particularly with ref-

erence to one telephone pole, "entirely rotted and broken off at the surface of the ground" and supported in an erect position by a single wire attached to it near the top, so that when the wind blew against this pole it was caused to swing back and forth against appellant's electric light wire, and on September —, 1909, during a wind and rain storm the loose pole became wet and was blown against one of appellant's light wires breaking or burning it off, causing it to fall, and the live end of the wire fell upon and across appellee's clothesline post on her premises, adjoining the alley where appellant's poles and wires were erected, causing her clothesline wire attached to the post to become charged with 2,300 volts of electricity, and on the following day, while appellee was engaged in hanging clothes on such clothesline wire, her hands came in contact with such wire, and she was severely injured thereby. Negligence is also charged in failing to properly repair and remove the broken wire, after a reasonable time had elapsed. Answer in general denial closed the issues. Trial by jury resulted in a verdict and judgment for appellee in the sum of $800.

It is assigned as error that the complaint does not state facts sufficient to constitute a cause of action, and that the court erred in overruling appellant's motion for new 1. trial. It is urged that the complaint is not sufficient in the allegations as to negligent delay in removing or repairing the broken wire, but we believe the pleading sufficient without the charge relating to such delay. The complaint was drawn and the cause tried on the theory that appellant negligently erected its poles and wires in the first instance and negligently maintained them thereafter, and we are satisfied that the averments based on such theory, without the additional averments which are contended to be insufficient, clearly show that appellant's negligence caused the injury complained of in the manner 2. charged. Whenever the nature of the action can be determined from the general scope and tenor of the

complaint, other acts of negligence not pertinent to the main theory may be disregarded. *State, ex rel.* v. *Scott* (1908) 171 Ind. 349, 351, 86 N. E. 409, and cases there cited.

Again, the sufficiency of the complaint was not questioned until after verdict, and in such cases it is well understood that every reasonable construction will be indulged 3. to support the complaint rather than to destroy it, and if the averments of the complaint are of such a character that another action for the same injury will be barred, and it does not omit any facts essential to the cause attempted to be stated, the judgment will be sustained in this court, as against an attack after judgment. *McGregor* v. *Hubbs* (1890) 125 Ind. 487, 25 N. E. 591; *Shoemaker* v. *Williamson* (1901), 156 Ind. 384, 59 N. E. 1051.

The evidence establishing negligence on the part of appellant is practically undisputed, and shows the existence of the facts averred in the complaint as previously set 4. out in this opinion, with the following additional facts: Appellant's poles and wires had been erected in the alley in May, 1909, one wire on each side of the old and swinging telephone pole, and were thus maintained until the time of appellee's injuries. For more than a week before the injury the old pole had been leaning against appellant's east wire. The Farmer's Telephone Company had erected new telephone wires near appellant's wires and the old pole, and about a week before the accident the old pole was resting against the new telephone wire, and appellant's agents and employes removed it from the telephone wires, but permitted it to remain leaning against appellant's wires. Rain had fallen on the evening before the accident, and when the old pole came in contact with appellant's wire, it was "afire and blazing like a lamp". During the same evening the electric light wire became severed, and the live end falling, came in contact with appellee's clothesline post. Appellant had at its plant what is known as an indicator, an instrument which records trouble on its lines of wire,

but the superintendent, while testifying about the accident and indicator, said he did not know whether the indicator recorded the trouble or not. On the morning of the accident immediately after appellee received her injury, appellant's wire charged with a high voltage of electricity was found lying across appellee's clothesline post just over the clothesline wire, which was wound several times about the post. This post was also wet, but gave evidence of having been fired by the live end of the broken wire. It is undisputed that under the conditions as they were immediately after the accident a quantity of electricity passing through the broken wire was communicated to the clothesline wire, and would be sufficient to cause injury to a person coming in contact with it as did appellee. There was some evidence that appellee was injured by such contact, although she received no physical marks.

Appellant was maintaining its poles and wires in a public alley in the rear of and adjacent to appellee's property. It was required to use reasonable care to prevent any of its wires from falling upon the premises of adjoining property owners. It has long been settled law that when one conveys through the streets and alleys of a municipality a substance which is known to be dangerous such as electricity, he is charged with the exercise of the highest degree of care to see that it does not escape so as to injure life or property. After careful consideration of all of the evidence, no doubt remains as to its duty under the circumstances. It was bound to understand and know what the result would be if one of its electric light wires became broken by coming in contact with the swinging pole, and the especial danger during a wind and rain storm. Although it was not charged with the knowledge that an accident might happen in the precise manner of this one, yet it was bound to understand and know that a current of electricity such as it was carrying through its wires would be dangerous to human life if it escaped, and

that accidents were a probable consequence of broken wires. The evidence also shows that such an injury as actually happened might reasonably have been anticipated. Appellant was bound therefore to use all the care that the handling of so dangerous and destructive an agency would require to prevent the destruction of life and property. It clearly appears that appellant was guilty of gross carelessness in the conduct of its business, and failed to do what even a reasonably prudent person by properly safeguarding its current of electricity could have done to prevent injury. Upon the evidence that appellant for weeks had left its wire in such a condition that by the constant motion of the swinging pole against its wires the insulation would become worn off, and while electricity was passing through the wires in that condition it would pass to the pole, and the wire would be burned off and broken and fall to the ground, becoming a source of danger to any one who might come in contact with it, the jury was amply justified in finding appellant negligent, and there was evidence to show that such negligence was the proximate cause of an injury to appellee. The court did not err in holding that the verdict was not contrary to law and was supported by sufficient evidence.

It is also insisted that there was error in giving certain instructions to the jury at appellee's request. Instructions Nos. 12, 17 and 18 do not inform the jury that appellant was an insurer of the safe condition of its wires at all times and to all persons. By these instructions the jury was expressly told that "electric light companies were not insurers", but that appellant in the exercise of its franchise was charged with the exercise of "the highest practical care not only in the erection of its wires, but in maintaining and in keeping them in repair". The jury was also told that the appellant was bound in law to erect and maintain its poles and wires as a careful and prudent person would do under similar circumstances, so as to

prevent injury to any citizen of the community who is him-self "using due care while pursuing his or her vocation in the ordinary walks of life". These instructions did not impose too great a burden of duty on the defendant, and we are not inclined to say that there would have been error if a more stringent rule had been announced in view of the deadly character of the agency used and in view of the undisputed facts of the case. Appellant ·was at least required to use a degree of care in the construction and maintenance of its poles and wires commensurate with their liability to do harm.

Instructions Nos. 21 and 22 informed the jury that "the defendant company was entitled to a reasonable time after the fall of the wire in question to repair it or remove

8.   it out of the way of any person who might come in contact with it, pursuing the ordinary vocations in life" and "in other words, if the defendant company removed or repaired the wire in question in a reasonable time, and were not negligent in the erection and mainte-nance of the same, then the defendant would not be liable in this action, because want of due care would not be estab-lished." These instructions contained correct statements of the law, and as we have viewed the complaint, they were more favorable to the appellant than it was entitled to receive, for the action was not based on negligence in fail-ing to repair after notice of the broken condition of the wire had been received by appellant, but instead, on negligence in the original construction and subsequent maintenance of the wires.

We have examined all the instructions given and we are satisfied that they contain a clear and reasonably concise statement of the issues and of the law applicable to the facts as disclosed by both appellant and appellee, conse-quently, appellant had no reason to complain of any of the statements of the law given to the jury by the learned judge,

and no cause of complaint because some of its instructions tendered were refused, as the same propositions were clearly and fully covered by other instructions given.

Objection is also made to the action of the trial court in admitting evidence tending to contradict appellee's witness Coble. This witness was the physician called to attend appellee immediately after the accident.

9.

In his examination in chief, he testified that he found her in a nervous condition and claiming that she had suffered an electric shock; that she had the appearance of one suffering from fright; that he remained with her for half an hour and administered morphine to quiet her; that she was in the same condition in the evening, and the following morning. He left each time medicine to quiet her, she became anaemic and lost several pounds in weight. On cross-examination he testified that he found nothing when he was called to see her that would indicate an electric shock, that he did not prescribe for an electric shock, that there were no burns on her body and he found no injuries on her body, that her pulse and respiration were normal. On redirect and reëxamination he was asked if he had not, in the presence of certain parties, said that her pulse was subnormal when he called in the evening, after his first call, and had not said that her condition was the result of an electric shock, and made other statements contrary to his testimony in court, to which questions he answered that he did not remember, or that possibly he did. The evidence disclosed by the cross-examination, consisting of affirmative statements on the part of the witness Coble, was extremely prejudicial to appellee's cause, and the court did not err, after the witness had been questioned on reëxamination as to statements made by him out of court, in permitting for the purposes of impeachment only, witnesses to testify that he made statements to them contrary to his testimony in court. §531 Burns 1914, §507 R. S. 1881, provides that a party may contradict his own witness by other evidence,

and by showing that statements different from his testimony were made by him on other occasions. This statutory right is held to apply only to those cases in which the witness who has testified has given evidence prejudicial to the party calling him. *Blough* v. *Parry* (1896), 144 Ind. 463, 40 N. E. 7, 43 N. E. 560; *Hull* v. *State, ex rel.* (1884), 93 Ind. 128; *Conway* v. *State* (1889), 118 Ind. 482, 21 N. E. 285. In the present case the witness gave prejudicial testimony, and the court did not err in admitting the testimony contradicting him complained of.

We have examined all of the exceptions saved to the rulings of the court as to which error is assigned, and find no error. Judgment affirmed.

Note.—Reported in 104 N. E. 94. As to duties, etc., of electric companies in respect of falling and hanging wires, see 100 Am. St. 529. As to the liability for injury or death of traveler coming in contact with electric wire in highway, see 31 L. R. A. 566; 22 L. R. A. (N. S.) 1169; 1 B. R. C. 799. As to the liability of an electric company for injuries resulting from one of its wires charging the wire of another company or person, see 16 Ann. Cas. 1194. See, also, under (1) 15 Cyc. 477; (2) 31 Cyc. 116; (3) 31 Cyc. 769; (4) 15 Cyc. 479; (5) 15 Cyc. 471; (6) 29 Cyc. 430-433; (7) 15 Cyc. 480; (9) 40 Cyc. 2766.