AYRSHIRE COAL COMPANY *v.* WILDER, ADMINISTRATOR.

[No. 10,616. Filed December 22, 1920. Petition for rehearing dismissed March 11, 1921.]

1. ELECTRICITY.—*Use.*—*Care Required.*—One using such a dangerous agency as electricity is bound to know the extent of the danger. p. 140.

2. MASTER AND SERVANT.—*Negligence.*—*Maintenance of Uninsulated Electric Wire.*—Maintenance of an uninsulated wire charged with a dangerous current of electricity in a place where an employe in the discharge of his duty may come in contact with it constitutes negligence. p. 141.

3. MASTER AND SERVANT.—*Injuries to Servant.*—*Negligence.*—*Evidence.*—*Character of Accident.*—*Burden of Master.*—Where an accident itself affords reasonable evidence of negligence, as where an employe is injured by coming in contact with an uninsulated electric wire carrying a dangerous current, the master must show why it should be relieved from liability. p. 141.

4. NEGLIGENCE.—*Evidence of Want of Care.*—*Occurrence of Accident.*—Where a thing is shown to be under the management of the defendant or his servants, and an accident results such as in the ordinary course of things does not happen if those who have management use proper care, it affords reasonable evidence, in the absence of explanation by defendant, that the accident arose for want of care. p. 141.

5. MASTER AND SERVANT.—*Injury to Servant from Uninsulated Electric Wire.*—*Complaint.*—*Surplusage.*—*Allegation as to Voltage.*—*Statutes.*—In an action against the master under the Employers' Liability Act (Acts 1911 p. 145, §8020a *et seq.* Burns 1914), for the death of a servant, where the complaint

alleged that a certain wire carrying from 2,200 to 2,700 volts of electricity was uncovered, unguarded and unprotected, that the employer had knowledge of the dangerous conditions and the amount of voltage carried and of the probability of the current passing from the wire to the employes and injuring them, the allegation as to the amount of voltage was not one requiring strict proof, in view of the averments of defendant's knowledge of the dangerous condition of the wire, but could be treated as surplusage, and a recovery was authorized even though the evidence showed that the wire carried between 240 and 260 volts. p. 143.

6. MASTER AND SERVANT.—*Injury to Servant from Live Wire.*— *Evidence.*—*Sufficiency.*—In an action against the master under the Employers' Liability Act (Acts 1911 p. 145, §8020a et seq. Burns 1914), for the death of a servant, evidence *held* to show that death resulted from the employe coming in contact with a live wire. p. 145.

From Gibson Circuit Court; S. L. Vandeveer, Judge.

Action by Levi Wilder, administrator of the estate of James W. Wilder, deceased, against the Ayrshire Coal Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Lucius C. Embree* and *Morton C. Embree,* for appellant.

*R. W. Armstrong* and *T. M. McDonald,* for appellee.

McMAHAN, J.—Complaint by appellee, under the Employer's Liability Act, Acts 1911 p. 145, §8020a et seq. Burns 1914, to recover damages for the death of James W. Wilder. The complaint alleges in substance that appellant owned and operated a coal mine, wherein the decedent was at the time of his death employed to couple and uncouple coal cars to and from an electric motor, in the entry of one of appellant's mines; that, for the purpose of conveying electricity to the motor, appellant had strung wires in the roof of said entry and, at the time of the injuries of which complaint is made, was causing an electric current of from 2,200 to 2,700 volts to be conveyed over said wires; that the decedent in the

discharge of his duties was required to, and did, work directly under one of said wires, and while he was performing his work, without any negligence on his part, his body came in contact with the wire, and he was thereby killed by reason of the electric current passing from the wire to and through his body; that his death was caused by the negligence of appellant in placing the wire above the working place and in negligently failing to guard and protect the wire so as to prevent decedent from coming in contact therewith while performing his duty; that it was practical to so guard and protect said wire; that appellant had knowledge of the exposed, unprotected and dangerous condition, and of the amount of voltage carried by the wire and of the probability of an electric current passing from the wire to its employes and injuring or killing them long enough to have guarded and protected the wire so as to have prevented the death of the decedent; that decedent, while in the performance of his duty, and without any knowledge of the location of the wire or the dangerous condition thereof, and while his mind was absorbed in the performance of his labor in coupling and uncoupling cars, came in contact with the wire, and the current of electricity passing thereover was transferred through his body, thereby killing him.

From a judgment in favor of appellee, appellant appeals.

The first contention of the appellant is that the verdict is not sustained by sufficient evidence, for the reason that the complaint alleges that the wire in question at the time the decedent was injured carried 2,200 to 2,700 volts of electricity, while the evidence, without conflict, shows that at that time it carried from 240 to 260 volts. Appellant says that, while courts take judicial notice that electric currents of high voltage are dangerous to human life, courts also know judicially that such cur-

rents of low voltage are not dangerous, but that courts do not know judicially where safety ends and danger begins.

It may be true that courts do not know judicially where safety ends and danger begins, but it is a matter of common knowledge that wires carrying a 1. light voltage are not dangerous and that wires carrying a high voltage are extremely dangerous in case of contact. *Winegarner* v. *Edison Light, etc., Co.* (1910), 83 Kan. 67, 109 Pac. 778, 28 L. R. A. (N. S.) 677. It has been said that: "Wires charged with an electric current may be harmless, or they may be in the highest degree dangerous. The difference in this respect is not apparent to ordinary observation, and the public, therefore, while presumed to know that danger may be present, are not bound to know its degree in any particular case. The company, however, which uses such a dangerous agent is bound not only to know the extent of the danger, but to use the very highest degree of care practicable to avoid injury to every one who may be lawfully in proximity to its wires and liable to come accidentally or otherwise in contact with them." *Fitzgerald* v. *Edison Electric, etc., Co.* (1901), 200 Pa. 540, 50 Atl. 161, 86 Am. St. 732. The statement that one using such a dangerous agency is bound to know the extent of the danger fully meets with our approval, but the statement as to the degree of care required of one using electricity is not in harmony with the rule laid down in *Union Traction Co.* v. *Berry, Admr.* (1919), 188 Ind. 514, 121 N. E. 655, 124 N. E. 737, where the expression "highest degree" of care is disapproved. It was there said: "The law imposes but one duty in such cases, and that is the duty to use due care; and the law recognizes only one standard by which the quantum of care can be measured, and that is the care which a per-

son of ordinary prudence would exercise under like circumstances."

The rule that a company using such a dangerous agent as electricity is bound to know the extent of the danger was recognized by this court in *Spencer Light, etc., Co.* v. *Wilson* (1914), 56 Ind. App. 128, 104 N. E. 94. For other cases see *Daltry* v. *Media Electric, etc., Co.* (1904), 208 Pa. 403, 57 Atl. 833; *Tackett* v. *Henderson Bros. Co.* (1910), 12 Cal. App. 658, 108 Pac. 151; *Hausler* v. *Commonwealth Electric Co.* (1909), 240 Ill. 201, 88 N. E. 561. The court in the latter case saying: "Electricity is a silent, deadly and instantaneous force, and a person or company handling it is bound to know the danger incident to its use * * * and is bound to guard against accidents by a degree of care commensurate with the danger incident to its use."

There can be no doubt that to maintain an uninsulated wire charged with a dangerous current of electricity in a place where an employe in the discharge of his duty may come in contact with it, without more, constitutes negligence. *Sheffield* v. *Morton* (1909), 161 Ala. 153, 49 South. 772; *Southwestern Tel., etc., Co.* v. *Bruce* (1909), 89 Ark. 581, 117 S. W. 564. When, as here, there is an accident which in itself affords reasonable evidence of negligence, the master must show why it should be relieved from liability. As said by the court in *Scott* v. *London, etc., Dock Co.* (1865), 3 Hurl. & Colt. 596: "Where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care."

This rule was announced and applied by this court

in *Knoefel* v. *Atkins* (1907), 40 Ind. App. 428, 81 N. E. 600, where many of the authorities are collected, and it is not extended by applying it to this case. *Pittsburgh, etc., R. Co.* v. *Hoffman* (1914), 57 Ind. App. 431, 107 N. E. 315; *Prest-O-Lite Co.* v. *Skeel* (1914), 182 Ind. 593, 106 N. E. 365, Ann. Cas. 1917A 474.

Section 4 of the Dangerous Occupation Act (§3862a *et seq.* Burns 1914, Acts 1911 p. 597) makes it the duty of all owners or persons engaged in the transmission, generation or use of electricity to see and require that all wires, appliances, ways, plants, tools, and contrivances are carefully inspected and tested so as to detect and exclude defects and dangerous conditions; that all contrivances used are amply, adequately and properly constructed and adapted to meet the requirements for which they are designed or used with safety; that they are properly and safely used, operated, handled and maintained; that dangerous machinery, mechanism, contrivances, tools, etc., are securely guarded, or otherwise protected with safety arrangements and appliances to the fullest extent possible that the operation of such machinery, device and contrivance shall permit; that in the transmission and use of electricity of a dangerous voltage full and complete insulation shall be provided at all points where the public or employes of the owner, contractor or subcontractor, transmitting or using said electricity are liable to come in contact with the wire or wires; that live electrical wires carrying dangerous voltage are strung at such distance from the poles or supports as to permit repairmen to freely engage in their work without danger of shock, and generally making it the duty of all owners, managers, operators, contractors, subcontractors and all other persons having charge of, or responsible for, any work, mechanism, machinery, appliance, building, factory, plant, means, employment, or business of whatsoever nature, involving

risk or danger to employes or to the public, to use every device, care and precaution which is practicable and possible to use for the protection and safety of life, limb and health, limited only by the necessity for preserving the reasonable efficiency of such structure, ways, work, plant, building, factory, elevator, car, engines, machinery, appliances, apparatus or other devices or materials, without regard to additional cost of suitable materials or safety appliances or safe conditions or operations, the first concern being safety of life, limb and health.

The complaint in the charging part alleges that the wire was uncovered, unguarded and unprotected and that appellant had knowledge of the uncovered, unprotected and dangerous condition and of the amount of voltage carried by the wire—without alleging the voltage carried—and the probability of the current passing from the wire to the employes and injuring or killing them.   In view of this allegation of knowledge of the dangerous condition of the wire, we hold that the allegation in the first part of the complaint that the wire carried from 2,200 to 2,700 volts of electricity is not such an allegation as must be strictly proved.   If the appellant had knowledge of the unguarded, unprotected and dangerous condition of the wire, the allegation as to the amount of voltage can well be treated as surplusage.   Under the allegations of the complaint the wire which it is alleged caused the death of the decedent was a dangerous contrivance, and, under §4 of the Dangerous Occupation Act, *supra*, should have been guarded.   There was no error in the action of the court in refusing to give an instruction to the effect that the allegation that the wire carried from 2,200 to 2,700 volts was a material allegation that must be proved or in omitting to so charge in the instructions given by the court on its own motion.

Appellant next contends that the evidence fails to

show that the decedent was killed by an electric shock in consequence of his having come in contact with the trolley wire.   The evidence without conflict clearly sustains all the allegations of the complaint with the exception of the amount of voltage which it is alleged was carried by the trolley wire, and for the present excepting also the allegation that the death of the decedent was caused by his coming in contact with such wire. The evidence shows without conflict that the wire which it is claimed caused the accident in this case was uncovered and unguarded.   It carried a voltage high enough to cause the death of a person coming in contact with it.   At the place where the appellee's decedent was working, it was suspended from the roof of the mine at a height of but four feet ten inches from the floor where the decedent was required to be while in the performance of his duties, and it was practical to have guarded and protected this wire so as to have prevented this accident without interfering in the least with the usefulness of the wire.

Appellant makes no claim that this wire could not have been so guarded.   Its only claims are that appellee failed to prove that the wire carried the voltage stated in the complaint and that the evidence failed to show that the decedent was killed by reason of coming in contact with this wire.

The decedent's body was found immediately after the accident lying across one of the rails upon which the coal cars ran and almost directly under the trolley wire. One witness, who says that he was from thirty-five to fifty feet away from the decedent at the time of the accident, testified that he saw the light from the lamp, that decedent wore on his head, go down. This witness and another worker in the mine ran to the place where the decedent lay.   When they got there an empty coal car had in some way run upon his arm and side.   The

witness tried to lift the car off him, but could not do so, and waited until help came, when they lifted the car off his body.   Another witness, who helped lift the car, testified that the decedent's dead body was lying on its back beneath the trolley wire, his eyes open, tongue out, and a car wheel up against his shoulder.   There was a scraped or crusted mark from four to six inches long and a half inch wide on his arm which had the appearance of a burn, not a bruise.   Immediately following the accident the miner who saw him fall and two doctors treated him for electric shock and for nearly three hours attempted to bring about respiration.   His death was instantaneous.

Appellant argues that the marks upon the decedent's body are not shown to have been electric burns, and that the position of the body in relation to the 6. empty coal car points more strongly to the coal car being the cause of the death than the circumstance that he could have come in contact with the trolley wire.   This question was properly submitted to the jury.   They found that issue against the appellant, and there is ample evidence to support that finding.

Appellant makes no claim that negligence on its part has not been proved.   Indeed, the evidence clearly shows that the place where the decedent met his death was a veritable death trap.   A more dangerous place cannot be imagined.   The accident itself proves that the wire in question was dangerous; *res ipsa loquitur.   Perham* v. *Portland Electric Co.* (1898), 33 Ore. 451, 53 Pac. 14, 24, 40 L. R. A. 799, 72 Am. St. 730.

No reversible error has been shown.   Judgment affirmed.