Jose Rivera ECHEVARRIA and Fortunato Rivera Echevarria b/n/f Jose Rivera Echevarria, Plaintiffs-Appellees,

v.

UNITED STATES STEEL CORPORATION, Defendant-Appellant.

No. 15789.

United States Court of Appeals Seventh Circuit.

Feb. 27, 1968.

Rehearing Denied April 1, 1968.

Harlan L. Hackbert, Jeremiah Marsh, Chicago, Ill., G. Edward McHie, Hammond, Ind., for defendant-appellant.

Saul I. Ruman, Hammond, Ind., for plaintiffs-appellees.

Before MAJOR, Senior Circuit Judge, and CASTLE and KILEY, Circuit Judges.

MAJOR, Senior Circuit Judge.

This action was brought to recover damages for personal injuries sustained by Fortunato Rivera Echevarria, an infant, resulting from defendant's alleged negligence, and for medical expense and loss of services to his father, Jose Rivera Echevarria. The case was tried to a jury which returned verdicts favorable to plaintiffs, assessing the infant's damages at $40,000 and the father's at $5,000, upon which judgments were entered. Defendant's post-trial motions for judgments notwithstanding the verdicts or, in the alternative, for a new trial were denied, and defendant appeals from both judgments.

Inasmuch as defendant raises no question with respect to the amounts of the verdicts, there is no occasion to consider the evidence as to the nature and extent of Fortunato's injuries or his medical treatment and expense.

The accident occurred on June 14, 1963, in defendant's plant at Gary, Indiana, referred to as the Buffington plant, comprising about 600 acres. It is located along Lake Michigan and is bordered on the west by Cline Avenue, the boundary between the cities of Gary and East Chicago. The plant buildings are located generally in the center of the property and are reached by a private road running off Cline Avenue. A tract of land in the northeast corner of the intersection of Cline Avenue and the private road was leased to the Board of Park Commissioners of East Chicago for use as a playground. Immediately north of the playground and between it and the plant buildings are the main line tracks of the Baltimore and Ohio and the New York Central railroads. Adults and children traveled through the open area west of the plant buildings, going from the playground to Lake Michigan to fish or swim.

On the occurrence date, Fortunato, 8½ years old, with a mental capacity of a child of 5, went to the playground with his brother, Iran, 11½, and his friend, Manuel Carrion, 15. Fortunato testified that after playing on the swings he saw a pigeon flying, which he attempted to catch by running after it; he went through a hole in the playground fence and crossed the railroad tracks into defendant's plant; he followed the pigeon which flew to the top of defendant's high voltage electrical transformer located west of what was called the finishing mill of the lumnite plant, climbed a ladder to the roof of the building, went across the sloping roof to a point opposite the transformer, climbed over the top of a parapet or extension of the wall which was 2'7" higher than the roof, and slid from a projecting drainpipe down to the top of the transformer, which was 18 to 24" from the west wall of the finishing mill. Other boys had chased pigeons on defendant's premises, and one boy "actually caught" a pigeon.

Plaintiff and his brother both testified that there was a permanent steel ladder and a wooden ladder, leading to the roof of the finishing mill;[1] that it was the wooden ladder on which plaintiff climbed, and that it was close to the transformer. While on the transformer, he came in contact with the electrical current by which he was thrown to the ground, sustaining the injuries of which he complains. The top platform of the transformer was over 11' from the ground and was the only part where a person was exposed to electrical current. The shell of the transformer was grounded so that there was no danger of contact with anyone standing on the ground.

A hole in the fence, long in a state of disrepair, permitted easy access from the playground to the plant premises. Aerial photographs were introduced which purport to show paths leading from the playground toward the plant buildings. One witness testified that a path led directly from the playground to the finishing mill near where the transformer was located. It is readily inferable, in fact substantially conceded by defendant's witnesses, that defendant made no effort to prevent trespassing. It employed no guards to patrol the premises regularly and the sole watchman was stationed at the main gate.

Plaintiff's expert witness testified, over defendant's objection, that defendant's transformer installation was not "in keeping with the customary safety guards used for such installations in this area." The admission of this testimony, as subsequently shown, is relied upon as ground for reversal.

While the evidence viewed in the light most favorable to plaintiffs, as it must be, shows that it was a matter of common knowledge among defendant's employees that children as well as adults trespassed upon defendant's premises and in and around its buildings, there was no evidence that any trespasser, adult or infant, was seen on the roof of the finish-

---

1. A maintenance electrician testified that it was after the occurrence that a wooden ladder was placed near the transformer.

ing mill or on top of the transformer previous to the occurrence in issue.

This being a diversity action, the issue of liability must be determined by Indiana law. Defendant urges as grounds for reversal: (1) that the trial court erred in submitting the issue of defendant's negligence to the jury under the "dangerous instrumentality ⸍rule"; (2) assuming that such rule is recognized in Indiana, that the evidence was not sufficient to justify its submission; (3) that the court erred in admitting the testimony of an expert witness as to customary standards of care in electrical installations, and (4) that the court erred in withdrawing from the jury the issue of the father's contributory negligence.

 As a prelude to our discussion, we think that defendant's transformer, which carried a 6600 volt current along its top, was a dangerous instrumentality, under Indiana law. This court, in Cole v. American Bridge Co. et al., 152 F.2d 157, 160, cited numerous cases, including Ayrshire Coal Co. v. Wilder, 75 Ind.App. 137, 129 N.E. 260, for the statement:

> "The courts generally, including those of Indiana, have recognized that electricity is a dangerous force and that a person or company handling it is bound not only to know the dangers incident thereto but is obliged in its use to exercise a degree of care commensurate with its danger."

No Indiana case, or any other, is called to our attention which has held otherwise.

Defendant's main target on this appeal is the following instruction given by the court:

> "You are instructed that a person who maintains a dangerous instrumentality on his premises owes a duty to infants to use reasonable care to protect or guard the dangerous agency or instrumentality, or to give timely warning of such condition after having knowledge of it. Where the person could have reasonably anticipated that children might come into contact with the dangerous agency or instrument, and such contact is reasonably sure to inflict serious injury, such person should take whatever steps are reasonably necessary to prevent injury to those who are likely to come into contact with the dangerous agency or instrumentality although such persons may be trespassers."

The proposition thus stated was taken almost verbatim from Neal, Adm'r v. Home Builders, Inc., 232 Ind. 160, 111 N.E.2d 280, 290, 713.

In the trial court defendant objected to this instruction on the ground that it "did not correctly state the law of Indiana as to the liability of a landlord to one who is trespassing on its premises and is there exposed to any dangerous instrumentality," with the further statement, "The instruction may state a rule that is applicable to liability of a defendant to persons who are trespassing on the property of a third party, or perhaps liability under attractive nuisance doctrine * * *."

Defendant's theory in the trial court, as here, is emphasized by its tendered and rejected instructions, as follows:

> "The owner or occupant of premises owes no duty to a trespasser thereon, except to refrain from wilfully or intentionally injuring him after discovery of his presence. An owner or occupant of premises is not under a duty to use ordinary care to see that his premises are reasonably safe for a trespasser or licensee.
>
> "A trespasser or licensee takes the premises on which he travels as he finds them, with all their attendant risks and dangers, and if you find that the plaintiff Fortunato went upon the roof of the building or on the platform of the transformer without the invitation of the defendant, as a mere trespasser or licensee, your verdict should be for the defendant and against both plaintiffs."

Defendant's theory thus advanced ignores the "dangerous instrumentality

rule" and, more importantly, the fact that the infant plaintiff was admittedly a person *non sui juris*.

Defendant seeks to escape the effect of the pronouncement in Neal relative to the dangerous instrumentality rule with the assertion that it is "100-proof dicta which attains the dignity of neither doctrine nor precedent." We think this is an exaggerated evaluation of the court's ruling. True, the rule was not pleaded, but the court in a lengthy opinion analyzed and discussed numerous decisions involving a dangerous instrumentality, among which were those relied upon by plaintiff. As we read the opinion, it was in explanation of or response to such cases that the court made the pronouncement complained of, even though it was not applicable to the facts of the case. While the case might have been decided without the pronouncement, it was relevant to the presentation as made and has been so recognized.

The court in Neal cited Harris v. Indiana General Service Co., 206 Ind. 351, 189 N.E. 410, in which the trial court sustained a demurrer to a complaint which charged the defendant with failure to exercise reasonable care in guarding an electrical tower. The plaintiff, a deaf and dumb 18-year old boy with a mental capacity of a 6-year old was severely injured when the tower became electrified as he attempted to climb it. In reversing the trial court, the Supreme Court held that the defendant owed the plaintiff the duty to use reasonable care to protect or guard the dangerous tower even though plaintiff was guilty of a technical trespass when he attempted to climb the tower. The standard of reasonable care was held to apply because the defendant allegedly knew of the dangerous condition and could reasonably have anticipated that children might come into contact with it and be injured.

In Fort Wayne and Northern Indiana Traction Co. v. Stark, 74 Ind.App. 669, 127 N.E. 460, the court affirmed a judgment for the plaintiff where the defendant had placed a defectively insulated electrical wire through the branches of a tree located on private property and adjoining a public street where defendant knew children were in the habit of playing. Plaintiff, a 9-year old child, climbed the tree, touched the wire, and was injured. Liability of the defendant was sustained on the basis of the dangerous nature of the instrumentality involved and the foreseeable risk of injury to children. The court held that under the facts presented it was immaterial whether plaintiff was a trespasser at the time he was injured.

In Luhman v. Hoover, 6 Cir., 100 F.2d 127, 129, the court cited both Stark and Harris in support of the statement:

"In Indiana, as in many other states, it is held that when one keeps a dangerous article exposed where children are likely to come in contact with it, and where such contact is obviously dangerous to them, the person so exposing the dangerous thing should reasonably anticipate the injury that is likely to occur, and is bound to take reasonable care to prevent it."

65 C.J.S. Negligence § 63(58), p. 779 cites Neal in support of the statement, "Generally, a person exposing dangerous articles or instrumentalities on his premises in such a manner that children are likely to come in contact therewith to their obvious danger should reasonably anticipate the injury that is likely to occur and is bound to take reasonable care to prevent it," and on the same page cites Harris for the statement, "This duty may exist even though the dangerous thing is not an attractive nuisance."

Another case much discussed is Brush v. Public Service Co. of Indiana, 106 Ind. App. 554, 21 N.E.2d 83, in which judgment for the defendant was affirmed on the ground that the plaintiff, a normal boy over 14 years old, was guilty of contributory negligence as a matter of law in climbing from a factory roof onto a transformer. In doing so the court stated (21 N.E.2d 86):

"We recognize there are exceptions to the general rule, such as cases to which the attractive nuisance doctrine

and the doctrine of last clear chance have been applied and cases where children and persons *non sui juris* are likely to come into contact with a dangerous force."

Judge George N. Beamer, the trial judge, after a meticulous examination of the above cited cases and others, in his memorandum opinion stated:

"The above analysis reveals that the rule upon which the case at bar was submitted to the jury applies where a person maintains an instrumentality which is made extremely dangerous by virtue of defendant's negligence and defendant knows that children might come into contact with the dangerous instrumentality and receive serious injury from such contact alone. Defendant's contention that this rule does not apply where plaintiff is a trespasser upon defendant's premises and the dangerous instrumentality is located deep within the plant has no merit * * *."

■ With this conclusion we agree. Even so, we think we should consider Chicago, South Shore and South Bend Railroad Co. v. Sagala, Ind.App., 221 N. E.2d 371, and Cleveland, C., C. & St. L. Ry. Co. v. Means, 59 Ind.App. 383, 104 N.E. 785, 108 N.E. 375, upon which defendant places much reliance. As to these cases it states, "We submit this latest expression of the Indiana courts, handed down seven months after the denial of the post-trial motions here, compels the conclusion that the judgment below must be reversed * * *."

In Sagala, the court quotes extensively from Means, as does defendant on brief here. In each of these cases damages were sought for alleged negligence of the railroad defendants, resulting in injury (death, in Means) of a trespassing minor. Our study of these cases leads us to the belief that they are of no benefit to defendant; in fact, they further reveal the fallacy of its contention.

In Means, a 5-year old boy and his 12-year old brother went to a playground, then to defendant's property, where the 5-year old was killed by a moving railroad car. The railroad denied liability on the ground that the boy was a trespasser, or a licensee by sufferance. In a lengthy opinion in which many cases were reviewed, the court held that the owner of premises had no obligation to anticipate that an adult trespasser will place himself in a situation of peril. The court then stated (104 N.E. 793):

"To indulge such an assumption when a child, a licensee of immature years, judgment, and discretion, is involved would be against our common understanding and reason and lacking in every element of humanity and justice. Constructive knowledge on the part of a railroad company that children non sui juris are on its tracks, *or probably will be on its tracks at a particular place*, of necessity carries with it knowledge of the peril and *helpless condition of such children*, and hence the vigilance or care, which in the first instance was only negative in character, may become affirmative in the second instance and require that the company in such case shall, in some degree at least, exercise for the child the care and vigilance which it must know the child is unable to exercise for itself, and must not, by an affirmative act of omission or commission, expose such child to a danger which it knows, or has reason to believe, is unknown to and not understood or appreciated by such child."

The court held that the issue of negligence was for the jury and affirmed a judgment based upon its verdict.

In Sagala, plaintiff, a boy 10 years of age, was injured when struck by defendant's train. Admittedly he was a trespasser and *sui juris*. In fact, he testified at the trial that he was aware of the danger involved and that he had been warned against playing on the bridge where he was injured. The court reversed a judgment in favor of the plaintiff and in so doing stated (221 N.E.2d 375):

"After carefully considering the authorities cited by the appellant and ap-

pellees in their briefs and applying the general rules set out, supra, we come to the following conclusions: First, it is the general policy long observed by the courts that it is in the public interest for the owner of premises, and more particularly a business, to be allowed as much freedom as possible in the exercise of such ownership rights without encroaching upon the rights or safety of the public. As such, the rule has evolved that as to an adult trespasser and those who are *sui juris* the owner of a railroad track is generally under no duty to become cognizant or maintain a lookout for such persons. The trespasser comes upon such a right-of-way at his own peril. To this rule the courts have attached the exception that as to an infant *non sui juris* or an incapacitated adult in peril the railroad has the duty of reasonable care. The appellee was shown by his own testimony to be at an age of discretion and aware of the inherent dangers of playing on the tracks. He therefore would not come under the exception."

Thus, in both cases, the boys were trespassers on defendants' property when injured. In Means, the boy was *non sui juris*, and a judgment against the defendant, based on its negligence, was affirmed. In Sagala, the boy was admittedly *sui juris*, and a judgment against the defendant based on its negligence was reversed.

We reject the theory that plaintiff, a *non sui juris* minor, was barred from recovery on the ground that he was a trespasser on defendant's premises. We think defendant's duty was properly stated in the court's charge to the jury:

"Where the person could have reasonably anticipated that children might come into contact with the dangerous agency or instrumentality, and such contact is reasonably sure to inflict serious injury, such person should take whatever steps are reasonably necessary to prevent injury to those who are likely to come into contact with the dangerous agency or instrumentality

although such persons may be trespassers."

It appears appropriate at this point to consider defendant's contention that the court committed reversible error in the admission of testimony by plaintiff's expert witness. The witness was a consulting engineer with long experience, including designing and dealing with electrical transformers in the area. No objection was made or question raised as to his qualifications. After describing in some detail the physical conditions which he found on and about the transformer, including the building and ladder used by plaintiff, he testified as to the requirements contained in the National Electrical Safety Code, and that in good design practice the minimal code requirements were exceeded. After some colloquy between court and counsel, the witness was asked, "Would you have an opinion, under the facts you have studied and that I cited to you, whether that installation complies with the minimum safety standards for such an installation?" Upon objection by defendant, the court stated, "The question is not what the Code says, but what is your opinion." The witness answered, "I believe that the unsafe portions of the electrical installations were accessible within the normal consideration that an engineer in design would give this." The examination continued, over defendant's objection:

"Q. Are you familiar with other comparable transformer installations in our area?

"A. Yes.

"Q. How long have you worked in this area of Lake County, East Chicago?

"A. Since approximately 1949.

"Q. Is this installation, in terms of having protection or barriers, in keeping with the customary safety guards used for such installations in this area?

"A. No, they are not."

We are not impressed with defendant's argument that this testimony invaded the province of the jury. It was

relevant to be considered in connection with the jury's determination as to whether defendant exercised ordinary care in the construction and maintenance of its transformer.

The court instructed the jury:

"You are instructed that there is no evidence of contributory negligence of the parent in this trial and that issue is no longer before you."

Thus, the court withdrew from the jury the issue of the father's contributory negligence, which defendant contends was reversible error. As shown by the pleadings and particularly by the pretrial order, the only issue relating to contributory negligence was "Whether or not the plaintiff Jose [the father] was negligent, and whether such negligence, if any, proximately caused or contributed to cause said plaintiff's alleged damages."

■ Defendant, apparently as an afterthought, raised for the first time in its post-trial motions the theory that Iran, the injured boy's brother, was contributorily negligent and that such negligence was imputable to the father. We agree with the trial court that defendant waived any error committed in this respect. Certainly it was not required to rule or instruct on a theory of imputable negligence, which defendant had not suggested by pleading or otherwise.

■ Assuming, however, as did the court, that the issue has been properly preserved, we agree that defendant's contention is not tenable. In so concluding we think we need go no further than the recent decision of this court in Gillam v. J. C. Penney Co., 341 F.2d 457. That was an Indiana case and the contentions involved are quite similar to those here. There, Jerry Gillam, 3 years of age, in the company of his mother got on an escalator in a store. While the mother was holding his right hand, he sat down on a step of the moving escalator and caught his hand in its mechanism. As in the instant case, two suits were filed. Jerry by his father sued for personal injuries, and his father sued for loss of services. In response to the contention of the defendant that the court erred in instructing the jury that negligence of the mother could not be considered in determining liability, the court stated (page 461):

"That instruction was correct insofar as the suit brought in behalf of Jerry Gillam is concerned, for under Indiana law, such negligence, if any, could not be imputed to Jerry, an infant three years of age, who could not himself be guilty of contributory negligence." (Citing Indiana cases.)

■ Applying this language to the instant case brought on behalf of Fortunato, any negligence on the part of his brother, Iran, could not be imputed to Fortunato, an infant *non sui juris*, who could not himself be guilty of contributory negligence.

In Gillam, this court affirmed the judgment in favor of the infant plaintiff but reversed the judgment in favor of the father for his loss of services. In such reversal we held that under Indiana law the mother's negligence would bar such an action and that the court erred in its refusal to submit the issue to the jury. On this facet of the case, the facts in Gillam are a far cry from those here. There, the 3-year old infant plaintiff was in custody of his mother, while here it is claimed that the injured plaintiff was in the custody of his brother. In that case the court was requested but refused to instruct as to the mother's negligence, while in this case the court was not requested to instruct on the issue of the brother's negligence. Moreover, there was no proof that Iran was the custodian of his brother, either by designation of his parents or otherwise, and no proof of negligence on his part sufficient to present a jury issue.

■ Finally, defendant's contention that the court erred in submitting the case to the jury rests in the main upon the defense it sought, without success, to interpose. For reasons shown, the facts that plaintiff, an infant *non sui juris*, was a trespasser, that the transformer was located on defendant's prem-

ises, or that defendant was without knowledge of plaintiff's presence, do not as a matter of law absolve it of liability. The most plausible point which defendant makes on this score is that its transformer was located some 11' above ground and it could have had no reason to anticipate that plaintiff or any other person would come in contact with it. This argument, however, is considerably diluted by the fact that defendant furnished a ladder which made the top of the building adjacent to the transformer easily accessible. This ladder was little less than an invitation to a boy such as plaintiff to use it in pursuit of his childish fancy of chasing a pigeon. We have previously stated in some detail the evidence relating to this point, which we need not repeat.

We conclude that the case was properly submitted to the jury. We are not persuaded that its verdicts are not substantially supported or that the court committed prejudicial error entitling defendant to reversal.

The judgments are

Affirmed.