TOWN OF OXFORD *v.* SCOTT, ADMINISTRATRIX.

[No. 12,029. Filed February 26, 1925. Rehearing denied June 12, 1925. Transfer denied January 28, 1926.]

1. ELECTRICITY.—*Evidence held sufficient to sustain finding of negligence in the maintenance of electric lighting system.*— Evidence *held* sufficient to sustain a finding of negligence in the maintenance of an electric lighting system without invoking the doctrine of *res ipsa loquitur*, which was, however, also applicable. p. 163.

2. TRIAL.—*Instruction as to degree of care required of municipality maintaining and operating lighting plant, although objectionable, held not reversible error.*—An instruction that the care required of a municipality maintaining and operating an electric lighting plant is that degree of care that ordinarily prudent persons would exercise under like conditions and circumstances, followed by the statement that "the degree of care

is measured by the hazard and danger of the enterprise," *held* not reversible error in view of the other parts of the instruction and the obviously correct result reached by the trial. p. 164.

From Benton Circuit Court; *Burton B. Berry,* Judge.

Action by Dora M. Scott, administratrix of the estate of Emory H. Scott, deceased, against the town of Oxford. From a judgment for plaintiff, the defendant appeals. *Affirmed.* By the second division.

*Gaylord & Sills,* for appellant.

*Edmon G. Hall* and *Fraser & Isham,* for appellee.

NICHOLS, J.—Action by appellee against appellant to recover damages for loss sustained by her and her minor children by the wrongful death of her husband and father of her children.

To the complaint there was an answer in general denial. The cause was submitted to the jury for trial which returned a general verdict in favor of appellee for $6,000, upon which, after appellant's motion for a new trial was overruled, judgment was rendered. The only error relied upon by appellant for reversal is the action of the court in overruling its motion for a new trial, the reasons for which were the insufficiency of the evidence to sustain the verdict, under which reason, appellant contends that there is no evidence in the record tending to establish its negligence; that the verdict is contrary to law; and error of the court in giving each of certain instructions, and in refusing to give each of others tendered by appellant. The substantial facts as appear by the evidence are that appellant, a municipal corporation, was, on October 6, 1922, operating its own electric lighting plant in the town of Oxford, Indiana, and had been so doing for many years. Appellee's decedent, with his family, lived in said town in his own home which had been wired for lighting purposes before

Town of Oxford *v.* Scott, Admx.—84 Ind. App. 159.

decedent occupied it. In 1917, he erected a garage on his premises in which he installed electric wires and fixtures which were connected with the municipal system through his dwelling. Appellant's lighting system, which was the only high voltage electrical system in the town, consisted of a generating plant, a primary circuit running all over the town carrying about 2,300 volts, the street lighting or arc system carrying about 500 or 600 volts, and several secondary circuits in which the current by means of transformers was reduced to 110 volts. The transformer that reduced the current on the secondary circuit that supplied the decedent Scott's residence was just across the street from his residence. This circuit supplied about fifteen customers, including decedent. It was not grounded. This would have had the effect to take off any extra charge of electricity. The wires were sagging and in some places in close proximity, at one place, the arc and secondary wires were as close as five inches. Appellant's superintendent testified that at this place it was possible for the lines to come in contact, but not probable. There were shade trees along the street and these wires in some places were fastened through the trees. In numerous places, the wires had burned into the trees. On the day of the accident, it had rained all day. Contact between the wires was more frequent on rainy days. Fires were seen in trees just across the street from decedent's home on the night of the accident. It was common for the street lights to go out, and for fuses to burn out. The insulation was off the wires in numerous places. One superintendent had quit because the town would not furnish material with which to operate the plant. Another quit because he wanted to hire an extra man experienced in operating a plant and the board refused to hire one. The superintendent

in charge at the time of the accident was paid $330 per
month with which he hired two men beside himself.
They worked ten hours a day. He had no men to put
up wires and had to do the best he could. There were
three inside switches or buttons in decedent's garage.
The fixtures therein were in the same condition on the
day of decedent's death that they had been at all times
since they were installed in 1917.

The wiring system in the garage was in good condi-
tion and the wires were fully insulated, but after the
injury, it was discovered that the insulation surround-
ing the mechanism of the switches in the garage, where
the shocks were received, had been burned through and
perforated by an electrical current. An expert elec-
trician testified that in his opinion the ordinary current
of 110 volts would not be sufficient to make such a punc-
ture.

Twice during the day before the time of the injury,
the lights had been turned on without any shock being
received whatever. At these two times, the arc lights
were not on, but, in the evening, and when it was dark,
decedent's nephew attempted to turn on the lights in
the garage, and received a severe electric shock, which
knocked him down, badly burned his fingers and his
feet, and burned a hole through the sole of each shoe.
Flashes of fire were seen to fly out of his feet. Upon
being informed of his nephew's injury, Mr. Scott went
to the garage to investigate, but as his fingers came
in contact with the switch other than the one from
which his nephew had received his shock, he received
a severe electrical shock which resulted in his death.
At this time, the arc lights had been turned on, but,
soon after the injury, the manager and superintendent
of appellant's plant, being informed of the injury, or-
dered the street lights to be turned off, which was done.
During the time the street lights were on, other persons

whose light systems were attached to the same secondary circuit as the decedent's light system, received electrical shocks while attempting to turn on lights, but after the street lights were turned off, there was no trouble with the secondary circuit.

Appellant contends that the doctrine of *res ipsa loquitur* has no application in this case, while appellee contends that such doctrine under the circumstances of the case is applicable. It clearly appears that the shock received by the nephew of the decedent was received at one of the switches in his garage while the shock which caused the death of appellee's husband was received at another switch in the garage and at a time when the street or arc lights were burning. It also is undisputed that there was a burned place and puncture or perforation in each of the switches from which the shock was received, and uncontradicted expert evidence to the effect that such puncture was not produced by a voltage of 110 volts, but by a voltage of from not less than 400 to 500 volts. The evidence shows that aside from this perforation in the insulation of the switches, the lighting system of the garage was in good condition. These facts, coupled with the fact that the current was strong enough to produce flashes of fire from the nephew's foot as well as from the decedent, was certainly some evidence from which the jury might reasonably infer that appellant was negligent in permitting a higher voltage of electricity than 110 volts to escape from its wires to the wires in the garage of the decedent. The jury by its verdict found that this evidence was not met by appellant's evidence attempting to show due care on the part of appellant in the insulation and inspection of its plant, and we see no reason for disturbing its finding. It is true that appellant's superintendent testified that he inspected the plant on the day before the accident, but

this was done along with a primary duty of reading the meters in which he was engaged at the time, and while walking along on the ground, and the fact that he discovered nothing wrong with the plant when there is such abundant evidence that the insulation of the wires had peeled off in many places, shows that the inspection was not such as to relieve appellant of a charge of want of due care in maintaining its plant in a safe condition. In fact, as it seems to the court, it is hardly necessary that appellee should invoke the doctrine of *res ipsa loquitur* for the evidence of the careless and inefficient maintenance of appellant is such as fully to justify the jury in finding that such negligence in that regard resulted in the accident which produced the death of appellee's decedent. There are numerous cases where the charge of negligence in handling this dangerous element has been sustained by invoking the doctrine of *res ipsa loquitur,* among which we cite: *City of Decatur* v. *Eady* (1917), 186 Ind. 205, 115 N. E. 577, L. R. A. 1917E 242; *City of Logansport* v. *Green, Admx.* (1922), 192 Ind. 253, 135 N. E. 657; *Indianapolis Light, etc., Co.* v. *Dolby* (1910), 47 Ind. App. 406, 92 N. E. 739; *Ayrshire Coal Co.* v. *Wilder, Admr.* (1920), 75 Ind. App. 137, 129 N. E. 260; *San Juan Light, etc., Co.* v. *Requena* (1911), 224 U. S. 89, 97, 32 Sup. Ct. 399, 56 L. Ed. 680; *Alabama City, etc., Co.* v. *Appleton* (1911), 171 Ala. 324, 54 So. 638, Ann. Cas. 1913A 1181; *City of Thomasville* v. *Jones* (1916), 17 Ga. App. 625, 87 S. E. 923; *Turner* v. *Southern Power Co.* (1910), 154 N. C. 131, 69 S. E. 767, 32 L. R. A. (N. S.) 848, 852; *Western Coal, etc., Co.* v. *Garner* (1908), 87 Ark. 190, 112 S. W. 392, 22 L. R. A. (N. S.) 1183.

2. Appellant earnestly contends that instruction No. 4, tendered by appellee and given by the court, was erroneous, and that there should be a reversal because it was given. It instructs the jury

"that a municipality, such as the town of Oxford, in maintaining and operating a plant for the generation and distribution of electricity for lighting purposes, is held to that degree of care that ordinarily prudent persons under like circumstances would exercise in the maintenance and operation of a like plant, that is to say, the degree of care is measured by the hazard and danger of the enterprise in which the parties are engaged, and they are held to that degree of care that ordinarily prudent persons would exercise under like conditions and circumstances." The objectionable feature of the instruction, as seen by appellant, is found in the expression that "the degree of care is measured by the hazard and danger of the enterprise in which the parties are engaged." Appellant contends that this is tantamount to informing the jury that the care required in negligence cases varies, and that a higher and greater care was required of appellant on account of the hazards of the enterprise in which it was engaged than would be required in ordinary negligence cases. That the expression was unfortunate must be conceded. The instruction would have better expressed the law without the inclusion of this statement. It has been repeatedly held by this court that ordinary care under the circumstances of the case is the only kind of care which is required. *Terre Haute, etc., Traction Co.* v. *Phillips* (1921), 191 Ind. 374, 132 N. E. 745; *City of Decatur* v. *Eady, supra.* But, in view of the fact that the expression is so environed by correct expression of the law, thereby explaining its meaning as given to it by the court, and finally because it is manifest from all the record that a right result has been reached, we do not reverse because of this error, if such it be. We find no reversible error in other instructions given, nor in the refusal to give instructions tendered, even in the absence of the rule of "right result."

Appellant predicates error upon the court's action in overruling its objection to a hypothetical question. The question is a long one and we do not need to set it out. It is sufficient for us to say that we have read it carefully and we do not find it open to objection that appellant has made thereto.

Judgment is affirmed.