P. AND A. DISPATCH, INCORPORATED, ET AL. *v.* MC-DOUGALL.

[No. 13,895.   Filed March 14, 1930.]

*Clyde C. Karrer*, for appellants.

*Albert E. Schmollinger* and *Walter O. Lewis*, for appellee.

NEAL, P. J.—Appellee, plaintiff below, by his complaint alleged, in substance: That the defendants, appellants herein, were, on May 29, 1926, and prior and subsequent thereto, engaged in the business of the transportation of household goods and other personal property and storage of the same for hire; that appellants Clarence E. Armstrong and Gertrude Armstrong, were the owners of, and did business under the name and style of, "the Blue Star Transit Company"; that appellants Armstrong and Armstrong, were the principal owners of appellant P. and A. Dispatch, Incorporated, and appellant Clarence E. Armstrong was the manager of the corporation; that, on May 29, 1926, appellee and appellants entered into a written agreement, which agreement was made a part of the complaint, whereby appellants agreed to store the household goods and personal property of appellee for the sum of $5 per month, and thereafter to transport the goods to Chicago for a stipulated amount; that, on the day above men-

tioned, and, pursuant to the stipulations of the written agreement, appellee delivered into the possession and keeping of appellants his household goods and personal property of the value of $1,800; that the household goods and personal property of appellee were transported by appellants to their warehouse in the city of Indianapolis, Indiana, and were there placed in storage; that the warehouse of appellants was formerly used for the business of a livery stable; that it was a frame building, constructed of materials which were highly inflammable, and was not properly or reasonably constructed to resist fire; that the household goods of appellee were not separated from the goods and property of other persons by partitions of such a character as to resist or prevent destruction by fire; that appellants did not make known to appellee, and appellee had no knowledge of, the character of the warehouse where his goods were placed in storage; that appellants negligently and carelessly failed to take proper care of the goods and protect the same from fire, in that appellants placed, stored and kept the household goods of appellee in a warehouse which was known to them to be a structure of such character as to be highly inflammable and not reasonably protected against destruction by fire; that the goods of appellee were wholly lost and destroyed by fire on or about July 5, 1927, to appellee's damage in the sum of $1,800.

Appellants separately and severally moved that the complaint be made more specific, which motion was overruled; they then presented their separate and several demurrer to the complaint, which was also overruled. Appellants answered by general denial. Trial was had before a jury, which found for appellee and assessed his damages in the sum of $1,400; appellants' motion for a new trial was overruled and judgment rendered on the verdict.

The errors assigned are: (1) Overruling appellants' motion to make the complaint more specific; (2) overruling appellants' demurrer to the complaint; (3) overruling appellants' motion for a new trial, which presents as causes therefor: (1) That the verdict of the jury is not sustained by sufficient evidence; (2) that the verdict is contrary to law.

The allegations charge that appellants did not exercise due care and reasonable precaution to protect and preserve the property in their custody, in that the goods were stored in a building which was not reasonably fit and safe for the storage of household goods and other property, and thereby breached the contract. *Holt Ice, etc., Co.* v. *Arthur Jordan Co.* (1900), 25 Ind. App. 314, 57 N. E. 575; *Glazer* v. *Hook* (1920), 74 Ind. App. 497, 129 N. E. 249. The several allegations were sufficient to apprise the appellants of the breach of contract relied upon by appellee. No reversible error is available to appellants in overruling the motion to make the complaint more specific in this case. See Watson, Revision of Works' Practice §826, and authorities cited; *Belt R., etc., Co.* v. *McClain* (1914), 58 Ind. App. 171, 106 N. E. 742. All of the matters mentioned in the complaint were peculiarly within the knowledge of appellants, and they cannot be heard to complain. *Louisville, etc., R. Co.* v. *Crunk* (1889), 119 Ind. 542, 21 N. E. 31, 12 Am. St. 443. Appellants' demurrer to the complaint was properly overruled.

It is the law that a warehouseman shall furnish a building for the storage of property which is reasonably fit and safe for such purposes. 27 R. C. L. 994. He is not required, however, to store goods in a fire-proof building in the absence of a contract to that effect. The rule may be stated thus: It is the duty of the warehouseman toward the depositor of goods in his care that he shall exercise due care and reasonable

precaution to protect and preserve the property placed in his custody; that is, such care as an ordinarily prudent person engaged in that business is in the habit of exercising toward property intrusted to him for safe keeping. He should not only store them in a building reasonably safe from within, but should provide that they are reasonably safe from danger without. *Chicago & Alton R. Co.* v. *Scott* (1866), 42 Ill. 132; *Wiley* v. *Locke* (1909), 81 Kans. 143, 105 Pac. 11, 24 L. R. A. (N. S.) 1117, 19 Ann. Cas. 241; *Barron* v. *Eldredge* (1868), 100 Mass. 455, 1 Am. Rep. 126; *Levine* v. *D. Wolff & Co.* (1909), 78 N. J. Law 306, 73 Atl. 73, 138 Am. St. 617; *Muskogee Crystal Ice Co.* v. *Riley Bros.* (1909), 24 Okla. 114, 108 Pac. 629; note, 136 Am. St. 223. See *New Albany & Salem R. Co.* v. *Cambell* (1859), 12 Ind. 55; *Rice* v. *Nixon* (1884), 97 Ind. 97, 49 Am. Rep. 430.

The evidence favorable to appellee: On May 29, 1926, appellee entered into a written agreement with appellants whereby it was stipulated and agreed between the parties that appellants would store appellee's household goods for hire, and, upon request, transport the same by truck to Chicago for a stipulated sum; after the execution of the agreement, appellee delivered to appellant at his residence his household goods, which were transported to a building called a warehouse and leased by appellants in their business; on July 5, 1927, about 10 p. m., the warehouse was partially destroyed by fire and appellee's household goods were rendered practically worthless on account of the fire and water; appellant's warehouse was located on Deloss Street in the city of Indianapolis, was a frame structure, dimensions 40x40, and covered with a composition roof; the structure was inclosed by wood siding; the floor was concrete and cinders; the building was located on the rear part of a lot on the alley side; the building was lighted with electricity; two main wires were attached to the wooden

rafters about the center of the building along the comb of the roof; drop wires extended from the main wire and hung down near the center of the building; in the building were stored three trucks used by appellants in their business of transporting goods; these trucks, on the night of the fire, were located in the center of the building; the day following the fire, it was observed that the electric drop wires hung down very close to the gasoline tank of one of the trucks; the cap on the gasoline tank of the truck was off and there were water and gasoline in the tank; the household goods of appellee, and of others, were piled in the east end of the building from four to eight feet high; the several piles of household goods were held in place by supports made of wood; there was no protection of any kind between the center of the building, where the several trucks were stored, and the household goods; there was no loft or second story.

A witness for appellee, John C. Willis, gave evidence to the effect that he was, at the present time, connected with the prosecutor's office of Marion County; that, prior to that time, he was a deputy State Fire Marshal and also connected with the Fire Prevention Bureau of Indianapolis Fire Department; that, in the performance of his official duties, he had visited building after building in the city of Indianapolis to determine whether or not a "fire hazard" existed; that such investigations called for one or two investigations a week of buildings in the city of Indianapolis for over a period of two years; that he was at the building immediately after the fire; that he inspected the construction of the same and of the wiring, also observed the trucks stored in the building with gasoline in the several tanks, the location of the several piles of furniture, and the manner in which the same was stored in the building. He was then asked the following questions, and gave answers thereto: "Ques. And

from your knowledge, gained there in your official capacity, what is your opinion as to whether or not this building that you have testified about was a place that was reasonably safe from the point of view of a fire hazard, a place reasonably safe in which to store goods? Ans. I would say it was not."

"Ques. It was not a safe place? Ans. No, Sir." It will be observed that there was no objection made to the questions or motion to strike out the answers elicited thereto.

In the consideration of the error assigned in overruling appellant's motion for a new trial, we call attention to several cases and the language of the court. In the case of *Chicago & Alton R. Co.* v. *Scott, supra,* the court, in part, said: "The first question then to be determined is, was this wool stored in a suitable warehouse on its arrival at Chicago? . . . The weight of the testimony establishes, most clearly, the fact that the warehouse in which this wool was stored was not safe or suitable. . . . The building had nothing but a shell roof, nothing but boards and shingles, and no floor between the first and second story, so that there was nothing between the roof and the freight to protect it. . . . The whole evidence shows it was not a fit building into which freight should be stored. A fire proof building is not required, but a safe one is." Again, in the case of *Dieterle* v. *Bekin* (1904), 143 Cal. 683, 77 Pac. 664, the court said: "Whether the fire occurred without his knowledge, or whether the origin of the fire was unknown, were not in themselves conclusive of this question. The character of the building provided by him for the storage of the property, the character of the business for which he had permitted a portion of the building to be used, and in view thereof the precautions taken by him for the prevention of fire and for its extinguishment were also elements proper to be considered in determining this issue."

In the case of *Wiley* v. *Locke, supra,* appellees by first count pleaded a liability of the appellants because of an express agreement as to the condition of storage, and the second was upon the implied undertaking of a warehouseman for compensation to exercise reasonable care in providing an adequate and safe place for the goods placed in keeping. The court said: "The failure of the appellee to prove a breach of the express agreement is no reason why he should not establish the breach of the implied undertaking. . . . A warehouseman is not an insurer of goods received for storage. . . . The law does require that he shall exercise due care and reasonable precaution to protect and preserve property placed in his custody; that is, such care as an ordinarily prudent person engaged in that business is in the habit of exercising toward property intrusted to him for safe-keeping. He should not only store them in a building reasonably adequate and safe against danger from within, but should exercise due care to store them in a place where they will not be exposed to unusual hazards from without."

In this case, there is evidence to support the verdict of the jury. When appellants failed to provide a building that was reasonably adequate and safe for the storage of appellee's property, coupled with the attending circumstances that the fire originated inside the warehouse at night, that three trucks with partially filled gasoline tanks, from one of which tanks the cap had been removed, were stored in the building, that the furniture and household goods were piled indiscriminately over the floor space and not separated by fire resisting partitions, that the electric wiring was exposed, and that the building was filled with inflammable materials, warranted a verdict by the jury that appellants had breached their contract. *Line* v. *Mills* (1895), 12 Ind. App. 100, 39 N. E. 870; *Holt Ice, etc., Co.* v. *Arthur Jordan, Co., supra; Glazer* v. *Hook, supra;*

*Chicago & Alton R. Co.* v. *Scott, supra; Wiley* v. *Locke, supra; Dieterle* v. *Bekin, supra.* Appellants contend that the complaint of appellee proceeds upon the theory of negligence and that the evidence is insufficient to sustain a verdict of the jury that appellants were negligent. We are of the opinion that, even if appellant's view was adopted, the evidence is sufficient to warrant a verdict by the jury in favor of appellee. *Judd* v. *New York, etc., Steamship Co.* (1902), 117 Fed. 206; *Planters' Cotton & Ginning Co.* v. *Hartford Fire Ins. Co.* (1918), 132 Ark. 30, 200 S. W. 147; *Gulf Compress Co.* v. *Harrington* (1909), 90 Ark. 256, 119 S. W. 249, 23 L. R. A. (N. S.) 1205; *Barron* v. *Eldredge, supra.* See *Beck* v. *Wilkins-Ricks Co.* (1920), 179 N. C. 231, 102 S. E. 313, 9 A. L. R. 554, and annotations.

Judgment affirmed.