INDIANAPOLIS POWER & LIGHT COMPANY *v.* MOORE

[No. 15,135.  Filed December 16, 1936.  Rehearing denied
June 16, 1937.]

522.

*White, Wright & Boleman, Edgar M. Blessing, Otis E. Gulley,* and *Herman L. McCray,* for appellant.

*Stephen A. Clinehens, Matson, Ross, McCord & Clifford, James A. Ross,* and *Harry T. Ice,* for appellee.

LAYMON, J.—This is an action by appellee against appellant to recover damages for personal injuries alleged to have resulted from the negligent acts of the appellant. The complaint was in one paragraph, to which the appellant filed a motion to make more specific. This motion was overruled. A demurrer was thereafter filed to the complaint, and the demurrer was also overruled. An answer in general denial was then filed by the appellant, closing the issues. Trial was had before a jury resulting in a verdict and judgment in favor of appellee and against the appellant. A motion for a new trial was filed, which motion was overruled, and the appel-

lant now prosecutes this appeal, assigning as errors: (1) that the court erred in overruling appellant's motion to make the complaint more specific; (2) that the court erred in overruling appellant's demurrer to complaint; (3) that the court erred in overruling the motion for a new trial, alleging: (a) that the verdict is not sustained by sufficient evidence; (b) that the verdict of the jury is contrary to law; (c) that the court erred in its ruling on admission and rejection of certain evidence; (d) that the court erred in giving and refusing to give certain instructions.

The complaint in part is as follows:

"That on the eighth of January, 1931, and for a long time prior thereto, the said defendant owned and operated an electric power plant on Washington Avenue, in the city of Indianapolis; that at said power plant they generated electricity, which was used by manufacturing concerns and private home owners in the city of Indianapolis; that one of the companies purchasing electric energy generated by said defendant was the Acme-Evans Milling Company, that said company operated a flour mill in a building which was located near the power plant of the defendant herein.

"Plaintiff further says that on the 8th day of January, 1931, he was employed by the Acme-Evans Milling Company, and was working on the fourth floor of their mill and was engaged in operating flour grinders for said company and had been so engaged for a long period of time; that the defendant herein furnished electric energy to said company which operated said grinding machines and had erected and maintained a transmission line running direct from said power plant to the floor of the building on which this plaintiff was working. That there was located in said building on the floor where this plaintiff was working, an electric board which controlled the power furnished by said defendant compnay, to be used in operating said flour grinding machines; that said defendant company furnished to the employer of this plaintiff electrical energy at a voltage of about 2300 to 2500 volts; that said voltage was brought direct to said

electric board; that said defendant knew the construction of said electric board and the voltage that was ordered and permitted over said transmission line.

"*That the defendant had the exclusive charge and control of the primary system which included all of the electric machinery, generators and appliances generating electric energy also the transmission line carrying said electric energy to the electric board in the plant of Acme-Evans Milling Company as above set out.*

"Plaintiff further says that on the above named date he was performing his work for said milling company and was standing about 2 feet from the east side of said electric board to which the transmission line as above described, owned, controlled and operated by the defendant herein, was attached. That at that time the usual voltage of 2300 to 2500 volts was being sent over said line into said electric board; that at that time said electric board and all its connecting parts, motors and motor circuits connected to this board were in proper repair and free from grounds; that then and there and at that time the defendant company herein, *without warning carelessly and negligently allowed and permitted a voltage in excess of that for which the board was insulated and in excess of the voltage normally transmitted over said line, to be suddenly transmitted over said· transmission line as above set out,* which excessive voltage came directly from said defendant's power plant and equipment to the building and to the electric board near which this plaintiff was standing; and because of said sudden high and excessive voltage, a flash over was caused at the points where the terminals of said transmission line were connected to said electric board and flashes of fire were caused to be sent from said connecting points and an electrical explosion occurred.

"Plaintiff further says that said defendant unlawfully, carelessly and negligently erected and maintained said transmission line and had and was on the above named date transmitting electric energy over said transmission line not having then and there and at that time, lightning arresters or any other safety device to thereby prevent any excessive voltage from being transmitted over said

transmission line to the point where the terminals of said line connected with the electric board located on the fourth floor of the building of the Acme-Evans Company as above set out; that by reason of and as a direct result of the unlawful, negligent and careless acts and omissions of the defendant in failing to install and maintain on said transmission line said lightning arresters or some safety device, and to use every other device, care and precaution to prevent excessive voltage being transmitted over said line, excessive voltage was then and there and at that time transmitted as herein above alleged.

"That by reason of one or more of the careless and negligent acts as above set out, the flash over and electrical explosion was caused as herein alleged and the plaintiff was seriously burned and injured in this, to wit: . . .

". . . That said injuries, as above described, were directly and immediately caused by the careless and negligent acts of said defendant, in allowing and permitting said excessive voltage of electricity to be sent over said transmission line to said electric board; and as a direct and immediate result of the unlawful, careless and negligent act of said defendant in failing and omitting to install and maintain lightning arresters or some other safety device to prevent said excessive voltage from being transmitted over said transmission line to said electric board as above set out, that by reason of the premises said plaintiff has been damaged. . . ." (Our italics)

The appellant in its motion to make the complaint more specific charges that the allegations pertaining to the negligent acts complained of are conclusions and not recitals of ultimate facts. In the case of *P. and A. Dispatch, Incorporated, et al.* v. *McDougall* (1930), 91 Ind. App. 181, 170 N. E. 551, the court held that, "there was no reversible error in overruling defendants' motion to make the complaint more specific where the averments of the complaint were sufficient to apprise the defendants of plaintiff's cause of action, especially where all the matters men-

tioned in the complaint were peculiarly within the knowledge of the defendants. The case of *City of Logansport* v. *Green, Admx.* (1922), 192 Ind. 253, 135 N. E. 657, was an action against the city for the death of one electrocuted by a current transmitted from a high voltage wire to a low voltage service wire by the branches of a tree through which the wires were strung, and the court held that error, if any, in overruling defendant's motion to make the complaint more specific by requiring plaintiff to state from which of the high voltage wires the electricity escaped into the service wire, the location of the tree through which it escaped and how long it had been doing so, and exactly how it could be and was transmitted to the service wire, was not prejudicial to defendant, such facts being peculiarly within defendant's knowledge, and constituting a defense, by way of rebuttal, to plaintiff's *prima facie* case. The several allegations in the complaint in the instant case were sufficient to apprise the appellant of the negligent acts complained of, and the court properly overruled the motion to make more specific. The appellant's demurrer challenges the sufficiency of the complaint for the same reasons as stated in the motion to make more specific, and the court properly overruled the demurrer.

The substantial facts as they appear by the evidence are: that appellee was, on the 8th day of January, 1931, employed by the Acme-Evans Milling Company and worked in Mill C; that the appellant, power company, is a corporation organized under the laws of the state of Indiana and operating as a public utility, engaged in the business of furnishing light and power to the inhabitants of the city of Indianapolis for domestic and industrial purposes, with one of its electrical generating plants located on Washington Avenue in the city of Indianapolis, Indiana; that immediately east of this plant is the property of Acme-Evans Milling Company

on which the mill known as Mill C is located; that the Acme-Evans Milling Company purchased from the appellant its electrical power used for driving various motors which operated Mill C; that the electrical power supplied by appellant to Mill C was, at the time of the accident in question, conveyed by a cable or power line which ran from the west wall of appellant's plant into a conduit under Market Street, which is immediately north of both the appellant's power plant and Mill C, to a pole on the north side of Market Street; that the cable then ran to the top of the pole and followed a line of poles east along the north side of Market Street to Blackford Street, and thence south along a line of poles to a point opposite the north end of the east side of Mill C and from the pole through a conduit in the wall of Mill C to the inside of the mill and ended in a so-called "pot-head"; that the power line from the plant of appellant up to the "pot-head" and from the "pot-head" to the contact points on the switchboard in Mill C was installed by The Merchants Heat & Light Company, appellant's predecessor; that the electrical current furnished by appellant to the Acme-Evans Milling Company passed through a switchboard which was located on the fourth floor of Mill C in the northeast corner of the main room of that floor; that the east end of the panel or front of the board came within six inches of the concrete wall forming the east side of the building; that on the switchboard were three connecting lugs wherein the wires carrying the electric current to the switchboard were attached, and they were about five feet from the floor; that the voltage furnished by appellant at this switchboard consisted of 2300 volts passing through the three strand cable terminating in the lugs on the board heretofore referred to; that the generators in the appellant's plant, from which the power came, produced electricity of 4,000 volts and were con-

nected to a 4,000 volt bus bar and were stepped down by transformers to 2,300 volts, and from there through various connections were conveyed to the power line to Mill C; that at appellant's plant there was also the terminal of a 33,000 volt line from the Lenore Substation, and this substation was in turn connected with power plants at Cincinnati and Terre Haute; that this 33,000 volt current ran through various electrical connections and transformers and made contact with the 4,000 volt bus bar above referred to; that on the day in question, a few minutes before 9:00 A. M., a fire alarm, which came from the appellant, was received at Engine House No. 6; that the call was answered at the plant of the appellant, and a fire was found in rags in lockers back of the switchboard in the power plant; that an explosion at appellant's power plant was heard, a flash or blaze of fire on the power line was seen, the oil switch in the appellant's plant which controlled the line to Mill C was destroyed, and immediately thereafter an explosion occurred on the switchboard at Mill C and all of the electrical equipment in Mill C stopped; that a flame or flash over of explosive violence occurred at the switchboard in Mill C and that appellee was struck by this flame and burned; that the main fuses are connected in the power line before the current reaches the switchboard, their main function being to blow out and break the circuit, as a protective device; that an excessive surge of electricity would blow these fuses; that the flame destroyed the fuses on the front of the first three potential transformers nearest the connection lugs; that an excessively high voltage over a line gives a glow of bluish or yellowish green and that such a glow was observed by witnesses; that shortly after the explosion appellant's employees disconnected the power line to Mill C and made an inspection of all the instruments on the switchboard and of the motors in the mill and found that all the instruments and motors were in

good condition and free from grounds and shorts; that the main fuses which were blown out were then replaced and the three potential transformers off of which the fuses had been burned were replaced and the power line was then connected, the power turned on, and Mill C began to operate; that witnesses saw the flash in Mill C and then heard the mill go down; that at the time of the accident the appellee was approaching the front of the switchboard opposite the opening at the east end; that by reason of the explosion he was rendered unconscious and was found by workmen in the mill who came to the switchboard within a few seconds after the explosion; that as a result of the accident appellee's right arm from the elbow down, particularly his right hand and fingers on the hand, was severely burned, together with his right ear and a part of the right side of his face; that the burn on the hand and arm was so severe that it necessitated the removal of the right arm immediately below the elbow and that his face and ear were permanently disfigured from the scar and burn; that skin was grafted on appellee's face and he was in the hospital for over a month; that, in addition, appellee suffered other injuries in the nature of severe nervous shock and injury to his lungs, in that he is unable to breathe deeply without pain and suffers constant annoyance and difficulty in breathing during damp weather; that appellee is unable to lie comfortably in any position for any length of time.

Appellant contends that the doctrine of *res ipsa loquitur* has no application in this case, while appellee contends that such doctrine under the circumstances of the case is applicable.

It clearly appears from the evidence that the appellee received his injuries as a result of the escaping of an electrical current at the point where the power lines carrying electrical current from appellant's plant to the switchboard in Mill C at the Acme-

Evans Milling Company were attached. It further appears that the appellant had the exclusive control and management of the instruments which generated the electric current conveyed over the transmission line to the switchboard in Mill C at the Acme-Evans Milling Company. It also appears that the electric current by which appellee was injured came from no other source and that the flash over of electricity at the connecting points on the switchboard was not caused by any defect in the instruments, machinery, or appliances of the Acme-Evans Milling Company. That immediately after the injury the employees of appellant made an inspection of the switchboard and machinery and appliances of the Acme-Evans Milling Company and were unable to find any contributing factor which might have caused the injury. These facts, coupled with the fact that the current was strong enough to produce a glow of bluish or yellowish green, to cause the fuses in the transmission line to be destroyed, and sufficient to strike the glass windows, certainly formed evidence from which the jury might reasonably infer that appellant was negligent in permitting a higher voltage of electricity to be transmitted over its power line to the switchboard in Mill C. The jury, by its verdict, found that the evidence was not met by appellant's evidence attempting to show due care on the part of the appellant in the insulation and inspection of its plant, and we see no reason for disturbing its finding. It is true that appellant offered evidence based on expert testimony and mechanical appliances rebutting the fact that a higher voltage was transmitted; nevertheless, the jury had a right to consider all of the evidence and arrive at its conclusion on the disputed testimony.

The appellant contends that the evidence does not show that the instrumentalities which caused the ap-

pellee's injuries were under the exclusive control and management of the appellant. We can not agree with this contention, for the evidence is such that the jury could properly conclude that the injury was caused by an electric current produced and transmitted by a generating plant under the exclusive control and management of the appellant. The fact that the lines, points, and connections, wherein electric current escaped, were under the control and maintenance of the Acme-Evans Milling Company—without a showing that said lines, points, and connections caused the injury complained of—does not prevent the application of the doctrine of *res ipsa loquitur*.

After a review of many cases the court said in *Knoefel* v. *Atkins* (1907), 40 Ind. App. 428, 436, 81 N. E. 600:

> "From the consideration of all the cases on the subject this general rule may be adduced: Where an accident happens resulting in the injury to a person or his property, and it is made to appear that all the instrumentalities causing the accident are under the exclusive control and management of the defendant, and the accident is such as ordinarily would not occur if due care was exercised by those who have control of such instrumentalities, and a duty to exercise such care is owing the plaintiff from the defendant, then proof of the circumstances of the accident and injury resulting therefrom casts on the defendant the presumption of negligence and the burden of explaining the accident consistent with due care on his part."

"In some cases a presumption of negligence arises from the very nature of the cause of the damage sustained. The meaning of the well-known maxim *res ipsa loquitur* is simply that the nature of the event is such that the immediate efficient cause of the injury itself declares its negligent character, giving rise to the presumption of negligence." 8 Ency. Evidence, 871, 886.

In *Knoefel* v. *Atkins, supra,* the appellee sued appel-

lant to recover damages alleged to have been sustained from injuries resulting to her from the effects of taking a poisonous drug alleged to have been negligently sold by the appellant as and for a harmless remedy. The court said (p. 435) : "It has been well said that an accident speaks for itself when its cause is under the control of the party who brings it to pass. There must be reasonable evidence of negligence, but, where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care. In such case the mere proof of the accident and the circumstances under which it happened are sufficient to throw upon the person causing the accident the burden of showing that he used due care."

The case of *City of Logansport* v. *Green, Admx., supra,* was an action against the appellant city for damages for negligently causing the death of one Harry M. Green by electrocution. The complaint charged in substance that the city operated an electric light and power plant and maintained a line of poles in the city on which were hung certain wires that carried currents of electricity of 2,300 volts or more and provided a service wire leading from a transformer to the residence of appellee, who was a patron of appellant, and that appellant furnished him with electric current for lighting his residence; that the low voltage service wire running from the transformer to appellee's residence came in contact with the branches of living trees growing on the streets and thereby came in contact with a high voltage wire; that a high voltage of electricity escaped from appellant's high voltage wires into and over said low voltage service wire and into the residence of the appellee,

where it set fire to the paper lining of a water pipe with which the drop cord and wire screen surrounding an electric light bulb were in contact; that thereupon appellee touched the wire screen to withdraw it from the burning paper, and the current of electricity in the screen caused his death. The court, in disposing of a motion to make more specific, said (p. 258) : "... any further explanation of the precise manner in which the deadly current was communicated to the service wire would constitute matter of defense, and should come from the appellant company, by way of rebutting the *prima facie* charge of negligence thus made out."

It appears in the case of the *Town of Oxford* v. *Scott, Admx.*, (1925), 84 Ind. App. 159, 146 N. E. 833, that the appellee recovered a judgment against appellant for damages for loss sustained by her and her minor children for the wrongful death of her husband and the father of her children. The appellant, a municipal corporation, was operating its own electric light plant in the town of Oxford, and appellee's decedent, with his family, lived in said town in his own home which had been wired for lighting purposes before decedent occupied it. In 1917 he erected a garage on his premises in which he installed electric wires and fixtures which were connected with the municipal system through his dwelling. Appellant's lighting system, which was the only high voltage electrical system in the town, consisted of a generating plant carrying about 2,300 volts, the street lighting carrying about 500 or 600 volts, and several secondary circuits in which the current was reduced to 110 volts. The wiring system in the appellee's decedent's garage was in good condition and the wires were fully insulated, but after the injury, it was discovered that the insulation surrounding the mechanism of the switches in the garage, where the shocks were received, had been burned through and perforated

by an electrical current. That on the day in question decedent's nephew attempted to turn on the lights in the garage and received a severe electric shock which knocked him down. Upon being informed of his nephew's injury, decedent went to the garage to investigate. His fingers came in contact with the switch other than the one from which his nephew had received his shock, and he received a severe electrical shock which resulted in his death. In this case the appellant contended that the doctrine of *res ipsa loquitur* had no application. In disposing of the case the court said (p. 164) : "In fact, as it seems to the court, it is hardly necessary that appellee should invoke the doctrine of *res ipsa loquitur* for the evidence of the careless and inefficient maintenance of appellant is such as fully to justify the jury in finding that such negligence in that regard resulted in the accident which produced the death of appellee's decedent. There are numerous cases where the charge of negligence in handling this dangerous element has been sustained by invoking the doctrine of *res ipsa loquitur,* among which we cite : *City of Decatur* v. *Eady* (1917), 186 Ind. 205, 115 N. E. 577, L. R. A. 1917E 242; *City of Logansport* v. *Green, Admx.* (1922), 192 Ind. 253, 135 N. E. 657; *Indianapolis Light, etc., Co.* v. *Dolby* (1910), 47 Ind. App. 406, 92 N. E. 739; *Ayrshire Coal Co.* v. *Wilder, Admr.* (1920), 75 Ind. App. 137, 129 N. E. 260; *San Juan Light, etc., Co.* v. *Requena* (1911), 224 U. S. 89, 97, 32 Sup. Ct. 399, 56 L. Ed. 680; *Alabama City, etc., Co.* v. *Appleton* (1911), 171 Ala. 324, 54 So. 638, Ann. Cas. 1913A 1181; *City of Thomasville* v. *Jones* (1916), 17 Ga. App. 625, 87 S. E. 923; *Turner* v. *Southern Power Co.* (1910), 154 N. C. 131, 69 S. E. 767, 32 L. R. A. (N. S.) 848, 852; *Western Coal, etc., Co.* v. *Garner* (1908), 87 Ark. 190, 112 S. W. 392, 22 L. R. A. (N. S.) 1183."

In the case of *Indianapolis Light, etc., Co.* v. *Dolby, supra,* it appears that appellee's decedent, on the morning

of July 13, 1906, was on duty as a policeman and approached a police patrol box to call up headquarters. While putting his key in the key hole of the box, he was thrown about nine feet and killed. The cause of the accident was a high current of electricity with which the city wires had in some manner become charged. It was contended, with force and plausibility, that there was no evidence supportive of the finding that the current in question was generated by appellant light and heat company and that no act of negligence on its part had been shown, either in commission or omission. Appellant based its claim that the evidence failed to show that the death was caused by its current upon the fact that no *direct* evidence was introduced showing the place of contact between its wires and any others or that there was such contact. The court said (p. 409) : "But the showing that said appellant had trouble upon its lines the night in question is supplemented by proof that it was the only one of the companies distributing high currents of electricity in that vicinity which did have trouble at that time. The absence of proof showing the exact point at which the current escaped does not overthrow the conclusion, properly drawn from other evidence in the cause, that it did escape. The very point in issue is not as to the place, but as to the fact of escape." The court further said in its opinion (p. 410) : "When appellee shows that her decedent was killed by an electric current, so conveyed from the dynamos of the light and heat company to the patrol box, she has made a *prima facie* case of negligence. This is the most conservative statement of the law that can be supported by authorities, many of which go very much further."

We hold that the doctrine of *res ipsa loquitur* applies to the evidence in the instant case as bearing on the negligence or lack of negligence of the appellant. Having decided that the doctrine of *res ipsa loquitur* applies in

this case, the court properly instructed the jury, and there was no error in the giving and refusing of the instructions complained of by appellant.

The appellant asserts that there was misconduct on the part of the jury due to the fact, as alleged, that the bailiff, during the deliberation of the jury, carried into the jury room several volumes of a dictionary. In support thereof, the appellant submits the affidavit of one of the jurors, the affidavit of one of the attorneys for the appellant, and another affidavit by the bailiff. It is true that the affidavit of the juror can not be considered for the reason that a juror can not, in this manner, impeach his verdict. Upon examination of the contents of the remaining affidavits, we are unable to conclude that the facts therein averred affect the verdict of the jury or that the appellant was harmed thereby.

Appellant, in its motion for a new trial, points out twenty-eight separate alleged errors in the admission and rejection of evidence, and under its propositions and authorities asserts that the court erred in admitting in evidence certain answers and testimony of the witness Emerson Kimberly in response to hypothetical questions propounded to him by counsel for appellee over the objections of appellant, for the reason that the questions assumed facts not proven and that there is no evidence introduced by appellee from which the jury, as a matter of law, could be permitted to infer that if there was a high voltage surge causing the switchboard to explode, as testified by the witness Kimberly, it arose or was caused by any negligent act of the appellant; that the matters involved in the questions and answers sought to be stricken out are technical and of such character that as a matter of law the jury can not be permitted to speculate or draw inferences as to the cause or effect of the facts assumed and

testified to; that the answers simply state that in the opinion of a witness a high voltage surge came from a place outside the plant and leave the jury to guess what was the cause of that high voltage surge. These hypothetical questions assumed facts upon which there was some evidence, and the answers, being responsive thereto, are not subject to the criticism urged.

The court did not err in overruling the appellant's motion to strike out all of the evidence of appellee's witness Wayne Lyons with reference to the lightning arresters, for such evidence was proper to be submitted to the jury in order that they might be properly informed as to all conditions and circumstances of appellant's instrumentalities, and if such evidence was immaterial, as urged by appellant, it is evident that there was no harm committed. We find no error in the rejection and admission of the evidence as complained of by the appellant.

Finding no reversible error and that there was sufficient evidence to sustain the verdict of the jury, the judgment of the lower court is affirmed.