8 N.J. Super. 438 (1950)
73 A.2d 89
ALFIERO PALESTRONI, PLAINTIFF,
v.
HARRIET KALISHER JACOBS AND SAMUEL JACOBS, HER HUSBAND, DEFENDANTS.
Superior Court of New Jersey, Bergen County Court Law Division.
Decided April 20, 1950.
*440 Mr. Eugene Sharkey argued against the motion for the plaintiff (Mr. John J. Wygant, attorney).
Mr. George P. Moser, attorney for the defendant, argued in support of the motion.
*441 WAESCHE, J.S.C.
The jury found for the plaintiff. The defendant seeks to set aside the verdict for misconduct of the jury during its deliberations.
Plaintiff is a building contractor. He sued the defendant in assumpsit for an alleged breach of a written contract for the erection of a two and one-half story, one-family dwelling; and also for the breach of several alleged oral contracts pursuant to which plaintiff made certain changes, alterations, and additions in the construction of the said building which were not provided for in the written contract.
The defendant is one of the owners of the premises. She filed a counterclaim against the plaintiff claiming damages for an alleged failure to complete the building according to the terms of the written contract.
The written contract and the written specifications, which are a part of the contract, were put into evidence with the consent of both parties. The evidence also contains the testimony of several witnesses relating to 37 items for extra work and materials, furnished by the plaintiff, for which he claimed additional compensation; and 16 items of work which the defendant alleged in the counterclaim the plaintiff failed to complete, and for which she claimed damages. In fact, the evidence submitted to the jury covered the construction of nearly every feature and portion of the building from the foundation to the roof.
Sometime after the jury had retired to the jury room to deliberate, one of the jurors asked the attending court officer for a dictionary. The officer reported this request to the trial judge, who directed the officer to obtain a dictionary from the law library and give it to the jury. The officer then got a Funk and Wagnall Comprehensive Standard Dictionary from the law library in the Court House, and delivered it to the jury. On the way to the jury room, he passed the defendant's attorney, in the Court House rotunda, and said to him "I have a dictionary for the jury," or "The jury wants a dictionary," or some remark of similar purport.
*442 A short time later, the jury returned a verdict in favor of the plaintiff for $7,891.79. Immediately following the announcement of the jury's verdict, the defendant moved to set aside the verdict because the jury had the use of a standard English dictionary which was not in evidence. This motion was denied. Upon formal notice, the defendant now moves "to set aside the judgment entered on the jury verdict rendered in the above entitled matter on the ground that the jury had, in the jury room while it was deliberating, a dictionary that was not a part of the evidence offered and received in the case." The notice of motion states that it is made as a supplement to the motion made immediately following the verdict, and in order to comply with Rule 3:59-2 of the Rules of Civil Practice. In determining the motion, I have disregarded my former ruling, and given full consideration to the present motion the same as though it were made now for the first time. In arriving at my decision, I gave two questions my earnest and careful examination.

FIRST: Is it improper for trial jurors to have the use of a recognized standard English dictionary, during their deliberations, in order to determine the common, and popularly accepted meaning of an English word which was used in the evidence, where no unusual, special, or legal significance is attached to the word?
The jury is a constituent part of the court for the administration of justice (Bradley v. Bloomfield, 85 N.J.L. 506; People v. Higgins, 16 N.Y.S.2d 302; Banks v. Watrous, 134 Conn. 592, 59 A.2d 723; Filbin Corp. v. U.S., 265 F. 354). The right of "trial by jury," as guaranteed by the Constitution (N.J. Const. 1947, Art. I, par. 9), means a trial by a jury composed of persons of intelligence, of good moral character, and fully competent and desirous to do their duty in the matters submitted to them (Commonwealth v. White, 147 Mass. 76, 16 N.E. 707, 710; Rent-A-Car Co. v. Globe and Rutgers Fire Ins. Co., 163 Md. 401, 163 A. 702). The statutes of New Jersey provide that a jury must be able *443 to read and write the English language (R.S. 2:85-1); and the statutes also provide a prudent method for drawing a jury panel of qualified and impartial citizens (R.S. 2:88-1 et seq.). It is the duty of the trial judge to assist in the impaneling of a trial jury which is capable of rendering a fair and just verdict according to the evidence (50 C.J.S. 945, § 208; Miss. Power Co. v. Stribling, 191 Miss. 832, 3 So.2d 807). And the jurors, who are finally selected to try the case, are severally sworn to "well and truly try the issue between the parties, and a true verdict give according to evidence." A verdict, if rendered by the jury according to its oath, should be the result of judgment and reflection, based on an understanding of the evidence; and it should also represent the jury's full conviction of the truth of that verdict (Kennedy v. Kennedy, 18 N.J.L. 450).
Questions of fact, in common-law actions, are determined by the jury from the evidence in accordance with instructions from the trial judge; and the court shall not assume, directly or indirectly, to take from the jury this prerogative (Kappertz v. McEwan and Son, 106 N.J.L. 484; Uvalde Paving Co. v. Central Union Stock Yards Co., 84 N.J.L. 297; Slocum v. N.Y.L. Ins. Co., 228 U.S. 364; 57 L.Ed. 879; Dimick v. Schiedt, 293 U.S. 474, 79 L.Ed. 603; 53 Am. Jur. 141, § 156). In considering and weighing the evidence, or testing its credibility, jurors are expected to rely upon their own common sense, general knowledge, observations, and experience which they possess as ordinary intelligent persons. In the case of Dunlop v. United States, 165 U.S. 486, 41 L.Ed. 799, the court said that the jury's "sound common sense brought to bear upon the consideration of the testimony, and in obedience to the rules laid down by the court, is the most valuable feature of the jury system." And, in the case of Kroger Grocery and Baking Co. v. Woods, 167 S.W.2d 869, 871 (Supreme Court of Arkansas), the court said, "Jurors are not expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life any more than the court is expected to *444 ignore its own knowledge and experience with ordinary affairs." To the same effect see also Shikany v. Salt Creek Transp. Co., 45 P.2d 645, 654 (Supreme Court of Wyoming); Blue Diamond Motor Bus Co. v. Hale, 69 S.W.2d 228, 230 (Court of Civil Appeals of Texas, San Antonio); Miller v. Hotel Savoy Co., 68 S.W.2d 929, 932 (Kansas City Court of Appeals, Missouri); Kraft v. New York Herald Co., 6 F.2d 644; affirmed, 10 F. 2d 1020. In the case of James Mitchell, Inc., v. Kreuger, 10 N.J. Misc. 1176, 1179, the court said, "Judicial notice is the cognizance of certain facts which judges and jurors may properly take and act upon without proof because they already know them. Courts may properly take judicial notice of facts that may be regarded as forming part of the common knowledge of every person of ordinary understanding and intelligence, generally known within the limits of their jurisdiction." This rule is expressed in Wigmore on Evidence (3rd Ed.), Volume 6, page 244, § 1801; and Volume 9, page 542, § 2570, as follows:
"Where a matter is too notorious to need evidence of it, the judge may `notice' it; and, upon this principle, certain things are assumed, for jurors also, to be so well known and undoubted that the jurors may take them into consideration without evidence of them."

* * * * * * *
"So far as the matter in question is one upon which men in general have a common fund of experience and knowledge, through data notoriously accepted by all, the analogy of judicial notice by the judge obtains here also, to some extent, and the jury are allowed to resort to this information in making up their minds."
The ordinary and generally accepted meaning of English words is a matter of common knowledge, which jurors are expected to know, and to take judicial notice of. In the case of New Jersey State Board of Optometrists v. S.S. Kresge Co., 113 N.J.L. 287, 293, the court took judicial notice of the meaning of the word "optometry," and used the definition given in Webster's New International Dictionary. In 31 C.J.S. 648, § 67, the rule is stated as follows: "Judicial notice may be taken of the usual meanings of words and phrases." In the case of Brown v. Piper, 91 U.S. 37, 23 *445 L.Ed. 200, the court said, "Courts will take notice of whatever is generally known within the limits of their jurisdiction; and, if the judge's memory is at fault, he may refresh it by resorting to any means for that purpose which he may deem safe and proper." In the case of Nix v. Hedden, 149 U.S. 304, 37 L.Ed. 745, the U.S. Supreme Court said, "There being no evidence that the words `fruit' and `vegetables' have acquired any special meaning in trade or commerce, they must receive their ordinary meaning. Of that meaning the court is bound to take judicial notice, as it does in regard to all words in our own tongue; and upon such a question dictionaries are admitted, not as evidence, but only as aids to the memory and understanding of the court." (See also Saltonstall v. Wiebusch and Hilger, 156 U.S. 601, 602, 39 L.Ed. 549.) In the case of Sonn v. Magone, 159 U.S. 417, 421, 40 L.Ed. 203, the court said, "The interpretation of words of common speech is within the judicial knowledge, and matter of law." In the case of Rossmann v. Garnier, 211 Fed. Rep. 401, 408, the court said, "The court is, of course, bound to take judicial notice of the ordinary meaning of all words in our own tongue (Michie, Vol. 7, p. 680); and upon such a question dictionaries are admitted, not as evidence, but only as aids to the memory and understanding of the court."
Wigmore on Evidence (3rd ed.), Volume 9, page 578, § 2582, states the rule as follows:
"Another class of instances, subject to the foregoing general consideration (ante, sec. 2580), is that of meanings of words and phrases and written symbols. So far as these are notorious and unquestioned, they are constantly found noticed."
The modern economic world is built upon the principle of divided production, in which each individual performs some special function. Nearly everyone is a specialist in some particular line of work or employment; consequently, persons engaged in the automobile industry know very little about the building trades, or vice versa. Bankers and financiers *446 would find great difficulty in understanding the discussions which normally take place at a medical society meeting, or vice versa. A farmer lives in a much different environment from his cousin, who lives in the city. Each occupation, trade, or branch of our economic system makes use of many long and well established English words and expressions which have recognized and accepted meanings, but which are not so frequently used or quite so generally understood by persons outside that particular trade or industry. Hence, a farmer, sitting on a jury, would not be expected to know some of the words used in the evidence of a case involving television or the moving picture industry. Neither would a Wall Street broker, sitting on a jury, be likely to know some of the words used in a suit involving animal husbandry, tilling the soil, or raising crops. Although a trial is concerned only with some particular part of our complex and widely diversified economic system, a trial jury is composed of a cross section of our population. It is made up of persons who are engaged in many different businesses, professions, trades, or occupations, and who are gathered from all social groups. A trial may involve a matter about which none of the jurors has any intelligent conception, except as heard from the witnesses. Yet the jury's verdict is supposed to be "the reasoned and logical result of the concrete application of the law to the fact."
Language enters as an essential element into every process of reasoning. Words are instruments or symbols by which we embody our ideas. The testimony of witnesses consists of words. The facts of the case are told with words. It is, therefore, of the utmost consequence that a jury should know and understand the meaning of all English words used in the evidence with strict accuracy. English is essentially a borrowed language, and filled with language curiosities. It is the youngest of languages  500 years old  but spoken by more people (200,000,000) than any other tongue. In 1829, Noah Webster published his first American dictionary which contained 70,000 words. Today, according to the World *447 Almanac of 1950, there are 400,000 reputable words in the English language. Webster's New International Dictionary (2d ed.) lists 550,000 English words. However, the leading daily American newspapers use only about 14,000 different English words, and the working vocabulary of the average literate American citizen is less than 10,000 words. Hence, English dictionaries are in common, daily use in nearly every American home. A dictionary is indispensable in a business office and in a professional office  particularly in a lawyer's office and in a judge's chambers.
Since jurors may take judicial notice of the commonly accepted meaning of all English words used in the evidence, they are entitled to have the use of a standard English dictionary to aid their understanding by refreshing their recollection of the meaning of any English word used in the evidence, where no unusual, special, or legal significance of its use is involved. Therefore, it is not improper for a jury to have the use of a standard English dictionary during its deliberations.

SECOND: Assuming that it is improper for a jury to have the use of an accepted standard English dictionary during their deliberations, should the judgment be vacated and the verdict set aside if the defendant was not prejudiced thereby?
Depositions of the jurors may be used on the argument of this motion to vindicate the jury, and to sustain the verdict (Kennedy v. Kennedy, 18 N.J.L. 450; Hutchinson ads. Consumers' Coal Co., 36 N.J.L. 24).
The depositions of the jurors disclose that the verdict had been agreed upon unanimously before the dictionary was delivered to the jury room. It also appears, from the depositions, that the dictionary was only used to determine the definition of the word "wainscote" or "wainscoting," a word appearing in the building specifications which were put into evidence without objection. The meaning of this word was not an issue; there was no evidence in the case that the word *448 had been used by the parties in any sense other than in its usual or regular meaning; and it was not mentioned at all in the judge's charge to the jury. The question which prompted the request for the dictionary was settled and finally disposed of before the dictionary was given to the jury. Each juror testified that he, or she, had relied solely upon his own personal knowledge of the meaning of the word "wainscote" or "wainscoting," in making his decision; and, that none of them relied upon the definition obtained from the dictionary. The jurors also testified that the use of the dictionary had not influenced any of them in arriving at the verdict as rendered. It is, therefore, evident that the defendant was not prejudiced by the delivery of a standard English dictionary to the jury room.
In the case of State v. Cucuel, 31 N.J.L. 249, our former Supreme Court refused to set aside the jury's verdict for misconduct, holding that a verdict should not be set aside on account of the misconduct or irregularity of a jury, unless it be such as might affect their impartiality or disqualify them from the proper exercise of their functions. Our former Court of Errors and Appeals, in the case of Warner v. State, 56 N.J.L. 686, expressly approved the rule of law as stated by the former Supreme Court in the case of State v. Cucuel, supra, and the higher court also expressed the principle of the rule in slightly different language. The Court of Errors and Appeals stated the rule which controls the courts in dealing with any misconduct of the jury by saying that, if the misbehavior is of such a nature as may have been in its effects prejudicial to the complaining party, the verdict will be set aside; if otherwise, it will not be set aside.
The Court of Errors and Appeals, in Falzarano v. D., L. & W.R.R. Co., 119 N.J.L. 76, approved the following general rule:
"The general rule is that where a paper which should not properly be with the jury during their deliberation has been sent to the jury room through inadvertence or accident, and not through the connivance or design of the prevailing party, the verdict will not generally be set *449 aside on that account if it does not appear that the paper was of a character to prejudice the unsuccessful party or that other circumstances rendered the reading harmful."
In the case of Wright v. Clark, 50 Vt. 130, 28 Am. Rep. 496, the court said, "But the court is under no such duty, uncalled upon, to explain the meaning of ordinary words; neither is it necessarily error for the jury to inform themselves of the meaning of such words from the dictionary, when they have occasion to use them in writing special verdicts. It is not apparent that the defendant was prejudiced thereby, and, therefore, it furnishes no ground for the reversal of the judgment of the County Court on exceptions." And in the case of Indianapolis Power and Light Co. v. Moore, 103 Ind. App. 521, 5 N.E.2d 118, 124 (Appellate Court of Indiana in Banc), the court said, "The appellant asserts that there was misconduct on the part of the jury due to the fact, as alleged, that the bailiff, during the deliberation of the jury, carried into the jury room several volumes of a dictionary. * * * Upon examination of the contents of the remaining affidavits, we are unable to conclude that the facts therein averred affect the verdict of the jury or that the appellant was harmed thereby." Rule 3:61 of the Rules of Civil Practice provide that no error shall constitute ground for granting a new trial, for setting aside a verdict, or for vacating a judgment "unless a denial of the relief sought appears to the court to be inconsistent with substantial justice."
The defendant's motion to set aside the judgment and grant a new trial will be denied.